PATRICK NOONAN *vs.* THE STATE OF MISSISSIPPI.

On the trial of a prisoner for selling liquor contrary to the statute, the statement of a bystander at the time of sale, " that the prisoner did let the negro man have the whisky," although made in the presence of the prisoner, is not admissible testimony : the bystander should himself be introduced.

The act of the legislature passed in the year 1842, entitled " an act to regulate the mode of obtaining license to sell vinous and spirituous liquors, and to amend the act entitled an act for the suppression of tippling houses and to prevent the odious vice of drunkenness ; approved February 9, 1839," is constitutional.

The common law, as a portion of the law of the land, is recognized by the constitution of this State, but is subject to be altered or repealed at the will of the legislature.

On the trial of a person for a violation of the statute regulating the mode of obtaining license to sell spirituous liquors ; it is not material to the proof of spirituous liquors to define its particular kind by name, or to the proof of a person's being a slave, to show his master's name.

The evidence under a plea of *autrefois*, acquit or convict, is not exclusively of the record, but may be oral to the extent required under the circumstances.

THIS cause comes into this court by writ of error to the Madison circuit court.

We shall only notice such parts of the record as are material to the proper understanding of the opinion of the court.

At the November term, 1842, of the Madison circuit court, the grand jury preferred the following presentment against the plaintiff in error :

" The State of Mississippi, Madison county circuit court, November term, in the year of our Lord one thousand eight hundred and forty-two.

" The grand jurors of the county of Madison and State of Mississippi, elected, empannelled, sworn and charged to inquire in and for the body of the county of Madison aforesaid, upon their oath present, that Patrick Noonan, late of the county aforesaid, laborer, with force and arms on the twenty-fifth day of August, in the year of our Lord one thousand eight hundred

and forty-two, at the town of Canton, in the county and State aforesaid, unlawfully did sell by retail, spirituous liquor to a negro man slave, without permission then and there of the master, mistress, owner, or overseer of said slave, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Mississippi.

"FRANKLIN SMITH, District Attorney."
"A true bill, JOHN MONTGOMERY, foreman of the grand jury."

A bench warrant issued upon this presentment; the plaintiff in error was arrested and gave bail; when arraigned for trial, he plead "not guilty."

The jury however found him guilty.

The defendant moved the court below, to set aside the verdict, which motion was overruled, and the defendant below embodied the evidence in the bill of exceptions.

The testimony was as follows:

John D. Scott, a witness on the part of the State, testified, that one of Captain Grigsby's negro men came to the store of the witness and asked for the plaintiff in error, stating that he wanted to get a flask or bottle of whisky; that at that time the negro's flask was empty; that the negro went into the store of Noonan's which was opposite to that of the witness, who followed the negro; that when the negro entered Noonan's house, the witness heard footsteps in the back-room, and in a short time the witness saw at the front door of Noonan's house, the negro man, Noonan and one or two other white men; the negro had his bottle or flask filled with whisky; it was the same flask that the negro had when in the store of the witness: the witness tasted the liquor and asked the negro where he got it, who replied that Noonan let him have it, which Noonan denied, looking down, however, and coloring in the face. That one Hoyle was present at this conversation, and said that Noonan did let the negro man have the whisky. "Here the court," so recites the bill of exceptions, "rejected as testimony what the negro man had told or said to the witness, and also rejected

the denial made by Noonan that he let the negro man have the whisky, but refused to exclude the statement of Hoyle."

This was all the testimony.

The defendant moved for a .new trial; but his motion was overruled, and the judge below, as the judgment of the court, fined him five hundred dollars, and ordered him to be imprison-for sixty days, either in the Hinds or Madison county jail.

Chief justice Sharkéy ordered a writ of error and superse-deas, to issue to the clerk of the Madison circuit court, and the case was accordinly brought into this court.

The errors assigned are numerous, 'and the arguments of counsel for the plaintiff in error lengthy ;* we however publish only those that bear upon the points that formed the basis of the decision of the court, to wit :

1. The illegal testimony as to the statments of Hoyle : and,

2. The unconstitutionality of the license law.

*George Calhoon,* for plaintiff in error.

The attention of the court is now requested to the act itself :

The fifth section provides " that if any person, either with or without license to retail, shall sell any vinous or spirituous liquors to any slave, without permission of his or her master, mistress, owner or overseer, he, she, or they so offending shall be, &c." The eighth section provides that it shall not be necessary to make averment in the indictment of the kind of liquor sold, nor that it was sold to any particular person, nor to the slave of any particular person.

The indictment in this case is general, that the defendant did unlawfully sell by retail spirituous liquors to a negro man

---

* NOTE BY THE REPORTERS.  An elaborate argument attacking the alterna-tive judgment of the *puisnè* judge, was presented to the court by Messrs. Cal-hoon & Ott ; contending that the order of imprisonment either in Madison or Hinds county jail, was an illegal and void order ; we have not, however, inas-much as the court did not deliver any opinion upon that point, thought ourselves at liberty to publish the argument.

Noonan *v.* State of Mississippi.

slave, without permission of the master, mistress, owner' or overseer of said slave.

It is plain, upon the very first view of this subject, that if the legislature had designed at once to destroy all the rules of law in criminal prosecutions, which have been so firmly established, to secure to the citizens a fair trial, it could not more effectually have done it than by the above provisions, as regards all offences under that act. In prosecutions for offences which require the intervention of a grand jury, two things have been deemed necessary to a legal conviction, as far back as the history of criminal jurisprudence in England throws its lights. 1. That the offence should be found by a grand jury; and 2. That the party should be found guilty by the petit jury of the same offence. Not any offence of a like nature, but of the very offence found by the grand jury, and no other. If this is necessary, it becomes a matter of mere accident for a party to get a fair trial when prosecuted under this act. The old rule, that the indictment must so describe the offences that the party will be enabled to prepare his defence, is abolished, and the grand jury may find the offence of selling to one slave, and the petit jury may try the party for selling to another—for the indictment being in general terms, the petit jury cannot ascertain from it the offence found by the grand jury. It would be quite as reasonable to charge a man with murder generally, without specifying the person killed, as to charge him with selling spirits in so vague a manner as not to bring his mind to any one particular act. " The first general rule representing indictments is, that they should be framed with sufficient certainty. For this purpose the charge must contain a certain description of the crime of which the defendant is accused, and a statement of facts by which it is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offence, and the defendant be put upon his trial in chief for another, without any authority. These precautions are also necessary in order that the defendant may know what crime he is called upon to answer." 1 Chitty's Crim. Law. 169. See, also, Bac. Ab. title Indict. G. Let us see if the constitution has not provided against the evils and oppres-

sion which would result from a violation of this and all other rules, deemed fundamental by so many generations in criminal prosecutions. The tenth section of the declaration of rights provides that the accused shall have the right to demand the nature and cause of the accusation; to be confronted by the witnesses against him; and to compulsory process for witnesses in his favor. Here the party is charged with retailing to a negro man slave. I ask how it was possible for the party to know what negro man he was charged with retailing to? The prosecutor could direct the evidence to a sale to any negro man slave in the world; and how was it possible for the defendant to know what one would finally be settled upon as the slave to whom he was charged with selling the spirits? And how could he prepare his defence? Will it be said that he is presumed to know the negro to whom he sold? But suppose he sold to none, as the law presumes till the contrary is made to appear—how could he, under such a charge, prepare his defence for a malicious prosecution? Again, how could he prepare to meet the question of slavery of the negro (which he had a right to do) unless the negro was described so that he could know him? Or how could he prepare to prove a license from the owner, when no clue was given by which he could find him? All was (and consequently a fair trial) impossible. When the constitution gives the accused the right to demand the nature and cause of the accusation, it means that the offence, in the language of the law, shall be identified; should be so particularly described that he can distinguish it from all other real or supposed offences. If it mean not this, it has no value. If it mean not this, what benefit is it to the accused to have compulsory process for witnesses in his favor, when he cannot foresee for what offence he will be tried? Again: the twenty-eighth section provides that the right of trial by jury shall remain inviolate. How can the right of trial by jury be held inviolate, if the accused is never notified of the accusation until it is made known to him, by the evidence against him, after the jury is sworn?

The twelfth section provides that no person shall, for an in-

dictable offence, be proceeded against criminally, by information, except in cases arising in the land or naval service, &c. Now what is an indictment under which an offence, not found by the grand jury, may be tried, but an information? Here the constitution, careful of the rights and liberty of the citizens, forbids that they should be prosecuted by information; but the law under consideration provides for a proceeding much more oppressive; for every information must (according to law) specify and identify the accusation, which, under this act, is not required. Is not this against the plain spirit of this, as well as the other two clauses of the constitution? I feel confident, that upon an examination of the subject, this court will hold the eighth section of this law to be unconstitutional, and that all the requisites of indictments in other cases, will be held necessary under it, and consequently that the indictment in this case is defective.

*John G. Ott*, on the same side.

This cause is brought before this court on an indictment for selling vinous or spirituous liquors, to a negro man, a slave. The indictment does not charge the defendant with selling liquor to any one particular negro; does not name him, nor does it state to whom the negro belongs. The indictment is founded on the fifth section of the act passed and approved on the 22d February, 1842, which enacts that no person, with or without license to retail, shall sell any vinous and spirituous liquor to any slave, without permission of master, &c., and he be subject to an indictment or presentment, and upon conviction thereof, shall pay a fine of five hundred dollars, and be imprisoned in the common jail of the county, for not less than thirty, nor more than ninety days; and if it be proved that the person was a negro or mulatto to whom the liquor was sold, that fact shall be received as *prima facie* evidence of his or her being a slave.

1. It is contended that the indictment is not sufficient, as it is uncertain, giving to the defendant no kind of notice of what he is charged, so that he may prepare his defence. " In all criminal prosecutions, the accused hath a right to demand the nature

and cause of the accusation." *Const*. Miss. art. 1, § 10.    Nor does the eighth section of the above mentioned act, cure the defects, because it is likewise contended that that act is unconstitutional, which I shall endeavor to show hereafter.    The eighth section enacts " that no indictment for a violation of the provisions of this act shall be quashed for the want of form; it shall not be necessary to make an averment therein of the particular kind or description of vinous or spirituous liquor sold; nor that the same was sold to any particular person or persons, nor to the slave or slaves of any particular person or persons; and it shall not be necessary to indorse the name on the indictment of the prosecutors."    Here, then, it will be seen that if this act is enforced *as it stands, it gives no kind of information to the accused of the nature and cause of accusation*, to which it seems to me he is entitled by our constitution.    This is not an indictment at common law, and if it were not for the eighth section of the act, on which the indictment is strongly founded, the fifth section of the act might be supported on common law principles, by charging that the defendant sold a quart or pint, or any certain quantity of liquor, to a negro man, calling him by name; that he was a slave, and the property of his owner; and that the liquor was sold without the consent of his master, mistress, &c. To put down the evil practice of retailing liquor to negroes, the above specifications might do, vague as they are; but to charge the defendant so generally as he is charged in the indictment, when imprisonment is only the pains, and the fine so large, the penalty, it does seem, that it violates the tenth section, article first, of the constitution, which says that " he cannot be deprived of his life, liberty or property, but by due course of law."

2.  At common law, the indictment .would be bad for uncertainty, and not having any prosecutor marked thereon. ˙ 3 How. 27, *Cody* v. *State*.    The name of the prosecutor must be marked on the indictment.  3 How. 433, *Peter* v. *State*.    5 Ib. 342, *Ainsworth* v. *State*.

Indictment must be certain as to the facts, circumstances and intent constituting the offence.    Arch. Crim. Plead. ·41.    It

must be positive. Ib. 55. Many other authorities might be cited, but it is deemed unnecessary for the present purpose.

It will be seen that the eighth section of the act takes away everything that is necessary to give the accused the nature and cause of the accusation, and gives him no opportunity whatsoever, of preparing his defence; all of which is clearly against, and prohibited by the constitution of this State.

The common law is now and was, enforced in this State before the adoption of the present constitution. Ordinance for the Government of Territory Northwest of the River Ohio, Dig. Miss. Territory, p. 30. Articles of Cession, p. 37, Ib. § 5, provides and carries into full force in this State, the ordinance northwest of the Ohio river. The common law and statute law of England, down to the year 1776, and applicable to their constitution, are in force in the State of Mississippi. 1 Kent's Com. 473, note a.

I think now, I have established the fact that the common law, so far as applicable to our constitution, was and is in force before adopting the late constitution; and the late constitution almost expressly recognizes the common law. It provides (§ 11, art. 1,) that " no person shall be accused, arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed."

The act of the legislature above named, must, therefore, give way, as the constitution is the paramount law of the land.

3. As regards the evidence, I think I may justly say that there is none. Scott only swears what he hears from Hoyle, a person present when the defendant denies having sold the liquor to the negro man. Upon which, it seems that Hoyle said that defendant did sell the liquor to the boy. This is but hearsay at the most. Scott proves nothing, for he knows nothing. "A witness, when under examination *in chief*, must not depose as he thinks, or persuades himself to believe; he must swear from his own knowledge of the fact. 1 McNally's Ev. 262, margin, ed. 1811. I would ask, did he swear to a single fact material of his own knowledge? I think not. Is this called confronting the defendant by witnesses against him? Hoyle was the only

witness that could confront the accused, and should have been produced—he knew the whole facts of the case—and, perhaps, on cross examination, the evidence might have entirely differed from that stated by Scott.  The fact is, Hoyle knew all, and Scott nothing.   Yet the accused is confronted by Scott, and not by Hoyle, and therefore the State failed to produce the best testimony.   For this, among other reasons that could be assigned, I think the court below erred in not rejecting the entire testimony of Scott.   To recapitulate ; if the act of the legislature is not unconstitutional, the case should be reversed, because the indictment is vague and uncertain ; and if the indictment is good, the cause should be sent back to the court below, reversed, because there is no evidence to support it, as will be seen from the bills of exceptions.

The Attorney General, *John. D. Freeman,* Esq., appeared on the part of the State.

Mr. Justice Thacher delivered the opinion of the court.

This case appears in this court by writ of error to the circuit court of Madison county.

The plaintiff in error was indicted at the November term, A. D. 1842, of the said circuit court, under the statute of 1842, entitled an " Act to regulate the mode of obtaining license to sell vinous and spirituous liquors, and to amend the act entitled ' an act for the suppression of tippling houses, and to prevent the odious vice of drunkenness,' approved February 9, 1839."   The indictment was framed upon the fifth section of said act, by which it was enacted, " That if any person, either with or without license to retail, shall sell any vinous or spirituous liquors to any slave, without permission of his or her master, mistress, owner or overseer, he, she or they so offending, shall be subject to indictment or presentment, and, upon conviction thereof, shall pay a fine of five hundred dollars, and shall be imprisoned in the common jail of the county for a period of not less than thirty nor more than ninety days; and upon the trial of any indictment under this section, if it be proven, the person to

whom the liquor was sold was a negro or mulatto, that fact shall be received as *prima facie* evidence of his or her being a slave." Upon this indictment, the jury found a verdict of guilty.

Various points were made to this court, and insisted upon as showing error in the judgment of the court below. We shall confine ourselves to one only for the purpose of judgment herein, but for general purposes and to explain our judgment, we propose likewise to remark upon another point that was fully reviewed by counsel in the argument here.

It was objected below, that the court, upon the trial, refused to rule out a portion of the testimony of John D. Scott, who was introduced as a witness upon the part of the State. That portion of his testimony, where the part referred to occurs, is set forth in a bill of exceptions, thus: "Witness asked the negro man where he got it? (a bottle of whisky,) and he said that Noonan had let him have it, and Noonan denied having sold the whisky to the negro man. That Noonan looked down and colored in the face greatly. That one Hoyle was present at this conversation, and said that Noonan did let the negro man have the whisky." This latter statement of what Hoyle said, the court below, upon application of the defendant's counsel there, refused to rule out from the evidence.

The propriety of the judgment of the court below upon this application, is fairly questionable here, as this court is not advised, and cannot say how much the weight of that testimony might have effected and influenced the jury in finding their verdict. It is now insisted by the plaintiff in error, that the statement of Scott in relation to what Hoyle said, is hearsay evidence, and of a kind inadmissible upon the trial; and by the State, to have constituted a part of the *res gestae* and therefore legitimate evidence for the jury.

To explain the character of a transaction, not only what was done, but what was said by all parties during the transaction, is admissible. In the celebrated trial of Lord George Gordon, the cries of the mob accompanying him were pronounced admissible to show the intention of its leaders. The principle, how-

ever, seems to depend upon the existence of two attendant circumstances,—that the testimony must relate to what was said by one connected with the act in question and during its progress.    The individual, Hoyle, was merely present at a conversation in which he volunteered his remark about what defendant below had done, and it does not appear that Hoyle was in any wise connected with the transaction, save as an uninterested listener to a conversation.    What he is declared to have said shows also that he would have been a witness to a material fact in the case, to wit, the delivery of the article alledged to have been sold, and there is nothing to show that he might not have been produced on the trial.    It is well settled in 1 Starkie on Evidence, 31, Phila. ed. 1834, that "where a witness to facts might be produced and examined on oath, little doubt can be entertained that hearsay evidence of his mere declaration, heard and detailed by another, ought to be excluded, so infinitely inferior in degree must such hearsay evidence be when compared with direct testimony delivered in open court."    In this connection we would again remark, that as in the daily transactions of life, men are apt to receive and credit without scruple the statement by one man of what was said by another, and as the jury, in the instance under review, might have been directed to their conclusion solely by Scott's repetition of Hoyle's statement, if it was erroneously admitted by the court below, we cannot suffer the plaintiff in error to be prejudiced to that extent.    Considering it, then, abstractedly, as a question of testimony, we are forced to the conclusion that it was illegal evidence in this case, and should have been ruled out by the court below upon the application of the defendant's counsel.

In the argument of this case, great stress was laid and much reliance seemed to be placed by the counsel for the plaintiff in error upon the insufficiency of the indictment growing out of a supposed unconstitutionality of the statute under which it was framed.    As the attorney general expressed his own doubts upon the point, the court feels called upon to advance its opinion.

It is very true that under our constitution, no person can be

accused, arrested or detained, except, in cases ascertained by
law, or deprived of his life, liberty or property, but by due
course of law, and that every accused hath a right to demand
the nature, and cause of his accusation, and that his right to
a trial 'by jury shall be inviolate.   In what does this statute
infringe either of these personal rights and privileges?   It is
said that at the adoption of our constitution, there was included
the common law, as a part of the law of the land, and that it
would now be an unconstitutional act to alter or repeal by leg-
islature, any principle, rule, or law, that was then a part of the
common law.   That, indeed, what was the common law at that
juncture, was in fact incorporated into our constitution, and
consequently not subject to any power short of that of the peo-
ple themselves, in the exercise of their inherent political power,
to alter or abolish their form of government.   This view of
the subject does not meet the approbation of this court, nor does
it for the purpose intended, require its elaborate examination.
The language of the constitution rebuts the presumption of such
a meaning or intention.   That the common law, like the com-
mon atmosphere around every living being, is gladly received
by all framers of government, is certainly very true, but that it
was adopted to remain perpetual, unaltered, and unalterable,
and not to be tempered to our habits, wants and customs, we
conceive was never designed by the wisdom of those who estab-
lished our fundamental law.   The constitution everywhere
allows, and in some places exacts the enactment of laws direct-
ly contravening the long established rules of the common law;
and when it enjoins that the rights of persons shall be " ascer-
tained by law," and protected " by the common law," it intends
to sanction only that species of legislation which shall, in its
assertion in criminal cases, be equal and general, and not partial
and particular.   The common law was the product of the expe-
rience of time, and the necessities of men living under a form
of government.   Many of its rules are now vexatious, and have
become unnecessary, and unfitted to our occasions, and are
properly repealed when they are found to obstruct the current
of justice or the interests of the whole people.   Many are " un-

seemly niceties," which Sir Matthew Hale declares to be "a reproach to the law, a shame to the government, an encouragement of villainy, and a dishonor to God." And our constitution has wisely provided for us the means to obtain what he desired to see, when he adds, "that it were very fit that by some law this overgrown curiosity and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal, without some timely remedy."

The statute runs against several *mala prohibita*, which were unknown to the common law. The substance of the offence, is the selling of vinous, or spirituous liquors to a slave, without the master's &c. permission, and not necessarily the selling of a particular kind of vinous or spirituous liquor to the slave of a particular individual. Every offence consists of the omission, or commission of certain acts, under certain circumstances, and all which are its necessary ingredients, must be stated. It certainly is not material to the proof of spirituous liquors, to define its particular kind by name, or to the proof of a person being a slave, to show his master's name. Nor is this a parrellel case with those uncertain charges enumerated in being "common thieves," "common evil-doers," and such like. It cannot be well said that no one can well know how to defend himself from so general a charge, as it is deemed, when the statute provides it in the permit of the master of the slave to whom the article is sold, nor that he cannot plead the charge in bar, or abatement of a subsequent prosecution. The evidence under a plea of *autrefois*, acquit or convict, is not exclusively of the record, but may be oral to the extent required in the circumstances. And where the law departs in one particular from a previous rule, it necessarily admits a proportionate relaxation in all particulars growing out of that departure.

The judgment of the court below must be reversed, and a new trial granted by the circuit court of Madison county.