OPINION OF THE COURT — by the
Iiow. I. CHILD.
The experience of some years has pretty satisfactorily shown, that there are many imperfections in the organization of the supreme court; developod by the lest of practical operations. The superior court of chancery is composed of but one judge, who regularly holds foiar courts in each year and in many instances with very crowded dockets. Selected on account of his great experience and learning in practice and theory, the judge of this court possesses peculiar advantages. The law and doctrine of contracts attract his undivedod attention. It is for him to weigh the evidence where there is a confliction of testimony, and he has to judge of the credibility of witnesses. The practice and rules of decision in courts of chancery are his every day’s concern and occupation, and he holds the peculiar province of unkenneling fraud, upon the grounds of irresistible inference, and public policy and utility, and he is almost constantly conversant in matters to which the judges of the courts of law are practically strangers.
The supreme court of the state is composed of four judges, who are also circuit riders at nisi priits, and each of them holds annually from ten to twelve courts of law in his circuit, without chancery jurisdiction.- In these courts it is the peculiar province of the jury, in every case, to determine all matters of fact, to weigh the evidence, decide upon the credibility of fitnesses, and settle the character of transactions alleged to be fraudulent, leaving to the judges but a limited sphere of action, to determine upon the competency of witnesses and pronounce the law arising upon the facts found by the jury. Rusty and inexperienced in chancery *225 practice and the rules of decision in courts of equity. These judges are placed upon the supreme bench, where two < nly of them, and not (infrequently the two youngest, as has happened in this instance, constitute a court of errors and appeals to revise and correct the decrees of the superior court of chancery in tho dernier resort. This is certainly a radical defect in the judicial system of the state, and thcie are considerations, sufficiently weighty, to inspire great diffidence on the part of this tribunal, in behalf of the chancellor, and high respect for the decision we are required to review, and when compelled to differ in opinion with the court, we cannot but venerate its decrees, oven amid the reversal that awaits them. The complainant below in this case, comes before us in the twofold character of administrator and a judgment creditor; the latter however, is not sustained by the evidence, and he must therefore stand in the light of an administrator alone, as it does not appear that creditors complain, or are made parties to the suit The prayer is for discovery and relief. Both the slating and charging parts of the bill are very full, and require much more by way of direct answer, from the defendant Nichols, against whom the gravamen of the charge is made, than a prudent and cautious pleader would have exacted. If apt incautious pleader requires too much on the ground of discovery, and the answer denies all (he circumstances upon which the equity is founded, such credit will be given to the'answer, that it will require of the complainant the production of the testimony of two positive witnesses, or one witness and strong circumstances,to do it away and entitle the plajgtiff to a deci ee in his favor. The complainant’s bill in such cases can have no weight, although sworn to for the purpose of obtaining an injunction, because a-plaintiff is in no case permitted to make evidence for himself.
I do not Jhink that any material part of the answer of Nichols can bo considered as matter in avoidance, the whole being a denial of the fraud charged in the bill of discovery. I will state a case, for example — should a complainant require of a defendant to disclose in his answer whether he had executed a bond fora thousand dollars, and the defendant, in his answer, should admit the execution of the bond, but go on to state it had been discharged by the payment of the money; this latter averment in the answer, would be in avoidance, and might be proven; but should tha *226 complainant incautiously require the defendant to make a discovery, as to the payment in discharge of Ule obligation, I think the reverse of the proposition would hold good, and the dangers of perjury be equal in either event.
The answer of Nichols denies the fraud, and is satisfactory upon all points, that he came in possession of Maben’s note by transfer from Daniels, honestly and for a valuable consideration; that he was liable by endorsement to Hyde, in the amount of one hundred dollars for Daniels; that he paid that much for Daniels, and took up the note, which is made part of the answer, marked exhibit, A, and speaks volumes in favor of the fairness of the whole transaction.
The answer of Cobler does not materially vary the case with regard to Nichols, but merely goes to shew that this defendant is a bone fida holder for valuable consideration without notice. Almost every material circumstance in the deposition of Hamilton goes to corroborate the answer of Nichols, and strengthens the presumption that Nichols did not obtain Mabin’s note, surreptitiously or by fraud. According to this witness, Daniels and Nichols had a settlement on the road to Tennessee, when Daniels handed four hundred or five hundred dollars to Nichols, a part to be retained by Nichols to pay himself, and the residue to be applied to the use of Daniels’s family. This settlement took place on the road, when Daniels was in bad health, and about a week before he died, and although the witness does not recollect that the note was tra'nsferred at that time, the inference is in fav^ of such a conclusion, because Nichols would have had no other opportunity of obtaining it. He was not in Company with Daniels for a week before his death, and after his decease his papers were conveyed to his family in Tennessee, by a man by the name of Tooly.
If we are to make our calculations upon the most accurate principles df computation, it will appear, that the amount paid by Nichols for Daniels ■exceeds one thousand dollars, without interest, and that the amount of Mabin’s note was about seven hundred dóllars. This will leave a small balance due to Nichols, which accounts for the money he received of Daniels on the settlement. It is said, moreover, by one of the witnesses, that there was a suit at law, in the state of Tennessee, which terminated *227 in favor of Nichols; and that Nichols paid over to the uso of Daniels’s family, the surplus fund placed in his hands for that purpose. If this be true, then the most probable subject matter of controversy in that action, is, that it was a suit brought by the legal representatives of Daniels vs. Nichols for the recovery of this amount, of Mabin’s note. If a jury of twelve men gave a verdict in favor of Nichols, upon the evidence of Mabin and Hamilton, how can the chancellor decree against him upon the same evidence, with the entire weight of Nichols’s answer thrown into the scale— presenting a much stronger case in favor of Nichols in this court, than it could have been at law. From the testimony before us, it is obvious that the deposition might have been made more full and satisfactory, if the plaintiff had availed himself of the evidence of Hide. The answer of Nichols would have been either strengthened and supported or very much impaired and impeached. Mabin’s note, too, might have been made an exhibit in his answer, thereby removing all obscurity, doubt p.nd intricacy that now broods over that branch of the controversy. As the case presents itself, however, for consideration, the complainant is driven to a-single solitary circumstance upon which alone he can rely for the foundation of a decree in his favor. It is to be found in the deposition of Mabin, and must have been conclusive on the mind of the chancellor': It is this: when Nichols called upon Mabin for the payment of his note given to, Smith, Mabin hesitated, when Nichols, for the purpose of obtaining a pari tial payment and a renewal of the note for the residue in his own name, stated to Mabin, that he was collecting the money for Daniels’s children. The plain, blunt, honest, and even indecorous manner of this witness, perhaps too, had its influence; for the deposition, if true, would have convicted Daniels of perjury, and perhaps subjected the property in his owp hands to the payment of Daniels’s debts.
Where a party can establish his claim by the testimony of witnesses,; there can be no foundation for a bill of discovery; and if m this case, the administrator of Daniels, had brought suit at law against Nichols for money, had and received, this court would not have sustained a bill of discovery, “lite pendente,” for the purpose of using the answer of Nichols, as evidence on the trial at law; because, in that action the testimony of Mabin would have been sufficient to shew the possession of the note in *228 the hands of Nichols, as well as the receipt of the money by him. The only possible equity in the bill, is to be found in the charge of fraud, and this is fully sworn away by the answer of Nichols. But one of two courses remained to be adopted by the chancellor — either to have dis missed the bill for want of jurisdiction, or as all the defendants had submitted to answer, without demurring to the relief, to retain the bill for the purpose of settling all matters in dispute, by a final decree. The latter course has been adhered to and all the consequences of judicial inquiry follow in settling tho principles upon which the case might be decided according to the established rules of decision in courts of equity. Upon this view of the case, thou, whatever may be our belief as men, where are we to look for the positive testimony of two witnesses, or of one witness and strong circumstances, to overthrow the credit which (he law attaches to the answer of Nichols extorted from his conscience by the comp.ainant himself? Is it to be found in the deposition of the two Fletchers? They are silent on the subject. In those of Cobler or Hamilton i* By no means, for these are both in corroboration of the answer. The case then reposes upon the single circumstance,' adverted to by Mabin in his deposition. That Nichols’s out-of-doors statements and admissions varied and differed from his answer on oath, who is made a witness by the complainants, for the purposes of discovery. How the n can the administrator of Daniels, purely as such, who, if Mabin’s deposition be true, was a bankrupt, adding crime to insolvency, and perjury to fraud, expect a decree against Cobler, a bona fide holder, for a valuable consideration, without notice? Such a decision would overthrow the best established principles of law, and undermine the foundations upon which property reposes. Iam therefore of opinion, that tho decree of the superior court of chancery be reversed, the injunction dissolved, and bill dismissed, at the costs of the complainant below.
R. J. Walker, for complainant.
D. S. Walker and S. M. Grayson, for defendant.