# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 27, 2013

Lyle W. Cayce
Clerk

No. 09-60651

LISA LEARMONTH,

Plaintiff-Appellee Cross-Appellant

v.

SEARS, ROEBUCK AND CO.,

Defendant-Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

KING, Circuit Judge:

A federal jury found Sears, Roebuck and Co. liable for causing Lisa Learmonth's injuries in an automobile accident. In a general verdict, the jury awarded her $4 million in compensatory damages. On Sears' motion, the district court interpreted the award to include $2.2 million in noneconomic damages, then reduced this portion of the award to $1 million pursuant to Mississippi's statutory cap on noneconomic damages. Learmonth appealed, arguing that the cap violates the Mississippi Constitution's jury trial guarantee and separation of powers provisions. We certified Learmonth's constitutional challenge to the Mississippi Supreme Court. Because that court declined the certified question,

No. 09-60651

we must address the merits of Learmonth's appeal. For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lisa Learmonth was seriously injured in a collision between her vehicle and a van operated by a Sears, Roebuck and Co. employee. Invoking diversity jurisdiction, Learmonth brought suit against Sears in federal court. After a trial, the jury found Sears liable for Learmonth's injuries, and awarded $4 million in compensatory damages. After the district court entered a judgment for that amount, Sears filed a motion under Federal Rule of Civil Procedure 59(a) and (e), arguing that Learmonth had made improper and inflammatory comments in her opening and closing statements, and that the award's excessiveness justified remittitur or a new trial. The motion also included a request to apply Mississippi's statutory $1 million cap on noneconomic damages. The cap is set out in Mississippi Code § 11-1-60, which provides:

> (1) For the purposes of this section, the following words and phrases shall have the meanings ascribed herein unless the context clearly requires otherwise:
>
> (a) "Noneconomic damages" means subjective, nonpecuniary damages arising from death, pain, suffering, inconvenience, mental anguish, worry, emotional distress, loss of society and companionship, loss of consortium, bystander injury, physical impairment, disfigurement, injury to reputation, humiliation, embarrassment, loss of the enjoyment of life, hedonic damages, other nonpecuniary damages, and any other theory of damages such as fear of loss, illness or injury. The term "noneconomic damages" shall not include punitive or exemplary damages.
>
> * * *
>
> (2)(b) In any civil action filed on or after September 1, 2004, . . . in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars ($1,000,000.00) for noneconomic damages.

2

No. 09-60651

It is the intent of this section to limit all noneconomic damages to the above.

(c) The trier of fact shall not be advised of the limitations imposed by this subsection (2) and the judge shall appropriately reduce any award of noneconomic damages that exceeds the applicable limitation.

Miss. Code Ann. § 11-1-60 (Supp. 2012).[1]

Because neither party had requested a special verdict itemizing damages, the jury's award was set out in a general verdict. In ruling on Sears' Rule 59 motion, the district court segregated the verdict into four parts—$90,098.42 for past medical expenses, $483,510.00 for future medical expenses, $1,207,486.00 for lost wage-earning capacity, and $2,218,905.60 (the remainder) for noneconomic damages.[2] The court obtained these figures from Sears' motion. Sears, in turn, had obtained them from expert testimony presented at trial. Learmonth did not dispute these figures. On the contrary, she adopted them in her own arguments opposing remittitur or a new trial. This appears to have been a strategic decision; in her responsive filings, Learmonth repeatedly noted that although Sears was attacking the full $4 million verdict as excessive, it had glossed over the fact that approximately $1.8 million of this amount had been awarded for actual and projected economic damages.

In addition to opposing Sears' request for a new trial or remittitur, Learmonth challenged the validity of Mississippi's noneconomic damages cap. She first contended that § 11-1-60(2)(b) violates the United States Constitution's Equal Protection Clause and the Mississippi Constitution's Jury Trial Clause, Separation of Powers Clauses, Due Process Clause, and Remedy Clause. U.S.

---

[1] Subsection (2)(a), which is not at issue here, sets out a $500,000 noneconomic damages cap in any malpractice action against a health care provider.

[2] The sum of these figures exceeds $4 million by two cents. The discrepancy appears to have resulted from a typographical error.

No. 09-60651

Const. amend. XIV, § 1; Miss. Const. art. I, §§ 1, 2; Miss. Const. art. III, §§ 14, 24, 31. Next, Learmonth argued that § 11-1-60(2)(b) violates the holding in *Hanna v. Plumer*, 380 U.S. 460 (1965), by requiring amendment of a jury's verdict in contravention of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 49(b)(2), 58(b) (providing the procedure for entering judgment following a jury trial). Finally, Learmonth argued that § 11-1-60(2)(b) in effect sets out a remittitur requirement. Because remittitur is a procedural matter, she maintained, a federal court cannot be bound by such a requirement under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Although the district court denied Sears' request for a new trial or remittitur, it reduced noneconomic damages to $1 million pursuant to § 11-1-60(2)(b). The court rejected Learmonth's challenges to § 11-1-60(2)(b) "[f]or the reasons well stated in" the memoranda submitted by Sears and the State of Mississippi, which had intervened to defend the statute's validity.

Sears appealed the district court's denial of a new trial or remittitur. We affirmed in part, holding that (1) the district court had not abused its discretion in denying Sears' motion for a new trial; (2) the $1.2 million award for lost earning capacity and the statutorily capped $1 million award for noneconomic damages were not excessive; and (3) this court's "maximum recovery rule" did not apply. *Learmonth v. Sears, Roebuck & Co.* (*Learmonth I*), 631 F.3d 724, 733–39 (5th Cir. 2011). We also stated that the unadjusted $2.2 million noneconomic damages award would not have been excessive. *Id.* at 736 n.3.

Learmonth cross-appealed, arguing that the noneconomic damages cap violates the Mississippi Constitution's jury trial guarantee and separation of powers provisions. She did not renew her other challenges to § 11-1-60(2)(b). Because there was no controlling authority at the time of decision, we certified the constitutional question to the Mississippi Supreme Court. *Id.* at 739–40. We held the appeal in abeyance pending that court's decision.

No. 09-60651

The Mississippi Supreme Court declined our question. *Sears, Roebuck & Co. v. Learmonth* (*Learmonth II*), 95 So. 3d 633, 639 (Miss. 2012) (en banc). The court analyzed § 11-1-60(2)(b)'s text, which provides that "[the trier of fact] shall not award the plaintiff more than One Million Dollars ($1,000,000) for noneconomic damages." It noted that, for purposes of Learmonth's cross-appeal, the parties had agreed that the verdict included a $2,218,905.60 noneconomic damages award. *Id.* at 635–36. Nonetheless, because it was not clear that the jury in this matter would have divided the award into the amounts the district court used, the Mississippi Supreme Court rejected the parties' stipulation, and held that it could not determine whether the "trier of fact" had awarded Learmonth more than $1 million. *Id.* at 637. The court further concluded that because the jury based its award on its "common experience," "reason," and "common sense"—factors known only to the jurors—no outsider could determine the award's component amounts with sufficient certainty. *Id.* at 638 n.7. Because attempting to determine the noneconomic damages portion would thus constitute "speculation," the court refused to answer the constitutional question "outside the clear context of its application." *Id.* at 637 (citing *InTown Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 724 (Miss. 2011) (en banc) (refusing to "guess" what portion of a general verdict constituted noneconomic damages)).

Following the Mississippi Supreme Court's decision, we asked the parties to re-brief the constitutional issues that Learmonth has raised on appeal, and permitted *amici* to do the same. Because *Learmonth I* was decided over two years ago, we asked them to include apposite authority that postdated their original briefs.

## II. DISCUSSION

A.    *Erie*

Immediately after the Mississippi Supreme Court declined our certified question, the parties submitted letter briefs interpreting that court's decision.

No. 09-60651

In sum, Learmonth interprets *Learmonth II* as prohibiting a trial court from applying § 11-1-60(2)(b) unless the jury itself has itemized the verdict such that noneconomic damages exceed $1 million. She further contends that because this prohibition is a matter of substantive state law, the *Erie* doctrine prohibited the district court from segregating the verdict and required it to enter judgment for the full $4 million award without applying the damages cap. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co.*, 304 U.S. at 78). Sears argues that federal procedural law controls a district court's interpretation of a jury award and use of special verdict forms, and thus urges us to make an *Erie*-guess as to § 11-1-60(2)(b)'s constitutionality. *See id.* As we will discuss, although the Mississippi Supreme Court's decision to decline our certified question appears to us to have a procedural component, we need not decide whether the court's decision ultimately amounts to a procedural or a substantive bar on § 11-1-60(2)(b)'s application because Learmonth has waived her *Erie* argument.

Following certification, the issue was raised for the first time whether our question was properly before the Mississippi Supreme Court given that the jury's verdict did not, on its face, include a noneconomic damages award exceeding $1 million. The court, after deciding it could not accept the parties' stipulation as to the noneconomic damages amount, held that it could not answer our question "outside the clear context of its application." *Learmonth II*, 95 So. 3d at 637. Although  the Mississippi Supreme Court is privileged to make its own rules concerning the propriety of considering an issue on appeal, we are bound by federal procedural rules, including those governing issue preservation. *E.g.*, *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009); *see also Huss v. Gayden*, 991 So. 2d 162, 165 (Miss. 2008) (although the operation of a Mississippi limitations defense in a federal proceeding is a matter of substantive

6

law, the "issue of whether the defense is raised, preserved or should be barred . . . [is] controlled by federal procedural law").

Learmonth raises her "verdict itemization" argument for the first time on appeal (in her letter brief filed after the Mississippi Supreme Court's decision) and did not include it in her initial brief—circumstances that normally cause an argument to be waived. *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010); *AG Acceptance Corp.*, 564 F.3d at 700. Although a party may provide notice of a change in law that affects issues already developed on appeal, a change in law normally does not permit a party to raise an entirely new argument that could have been articulated below or in the party's opening brief. *See* Fed. R. App. P. 28(j); *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1495–96 (11th Cir. 1990) (en banc).

One of our sister circuits has suggested, however, that a litigant does not waive an argument based on a decision of law unavailable during trial court proceedings if the litigant has properly raised a sufficiently similar issue. *McGinnis*, 918 F.2d at 1496. In *McGinnis*, the Eleventh Circuit addressed whether it could consider a novel argument based on a Supreme Court decision postdating the district court proceedings. The court held that the appellant had waived its argument because it could have made the same "general argument" to the district court, but had not done so. *Id.* The same result attaches here.

It is true that *Learmonth II*—the basis for Learmonth's "verdict itemization" argument—had not been decided at the time of Learmonth's cross-appeal. Nonetheless, that decision was grounded in statutory interpretation—a basis equally available to Learmonth. *See Learmonth II*, 95 So. 3d at 637 ("[W]e cannot know with any degree of assurance that 'they' (the jury) awarded Learmonth more than $1 million for noneconomic damages." (citing Miss. Code Ann. § 11-1-60(2)(b))). Other authority available during the post-verdict proceedings also provided an adequate basis for her argument. *See Passantino*

*v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 (9th Cir. 2000) (a district court itemizing damages has a "general obligation to preserve lawful jury awards when possible"); *Ill. Cent. R.R. Co. v. Gandy*, 750 So. 2d 527, 535 (Miss. 1999) (en banc) ("Given the difficulty of interpreting general verdicts, jury decisions on general verdicts should be given deference."). Learmonth thus could have made the "general argument" below that the district court was not permitted to interpret the jury's verdict such that § 11-1-60(2)(b) would apply.

Although Learmonth has waived her "verdict itemization" argument, we may consider it if she shows that "extraordinary circumstances" are present. *AG Acceptance Corp.*, 564 F.3d at 700. "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id.* (citation omitted). Learmonth argues that

> taking an *Erie*-guess after the state supreme court finds the question was not properly presented implicates the fundamental fairness of a process in which jurisdiction over state issues is lodged in federal court. Correction at a later date by a state's high court does nothing for the party against whom the error proved fatal to their cause.

We cannot agree. First, Learmonth has offered no authority stating that the potential for an incorrect *Erie*-guess constitutes a miscarriage of justice. Second, federal courts routinely decide unsettled state-law questions, and the issues that Learmonth has raised have been exhaustively briefed by the parties and various *amici*. Indeed, she has not established that we lack any of the ingredients necessary for a fair and thorough consideration of her appeal. Third, Learmonth failed to challenge the figures that the district court used to itemize the jury award, and even adopted them in her arguments respecting the award's excessiveness. Finally, as we have discussed, adequate authority existed to support a "verdict itemization" argument below. Having previously failed to take obvious steps to avoid § 11-1-60(2)(b)'s application, Learmonth cannot now

invoke the "miscarriage of justice" exception to extricate herself from the potential consequences of her own appeal. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

Our longstanding procedural rules prevent us from considering Learmonth's argument that the district court was prohibited from applying § 11-1-60(2)(b)'s cap because the jury had not itemized its verdict. Accordingly, we need not determine whether a federal court is bound under the *Erie* doctrine by this apparent prohibition, and will now address Learmonth's constitutional challenge. *See Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc) ("The denial of certification forces us to make the *Erie*-guess which we sought to avoid."), *abrogated in part by Salve Regina Coll. v. Russell*, 499 U.S. 225, 242 (1991).

## B.   Constitutional Challenge

Learmonth argues that § 11-1-60(2)(b) violates the Mississippi Constitution's jury guarantee and separation of powers provisions. As we will discuss, Learmonth has failed to satisfy her burden of establishing a constitutional violation.

### 1.   Legal Standards

A federal court sitting in diversity applies the substantive law of the forum state. *Salve Regina Coll.*, 499 U.S. at 226; *Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012). A district court's determination of state law is reviewed de novo. *Salve Regina Coll.*, 499 U.S. at 231.

"The general principle followed [by Mississippi courts] when considering a possible conflict between the [Mississippi] constitution and a [state] statute is that the constitutional provision prevails." *Bd. of Trs. of State Insts. of Higher Learning v. Ray*, 809 So. 2d 627, 636 (Miss. 2002) (en banc). However, "[s]tatutes are clothed with a heavy presumption of constitutional validity, and the burden is on the party challenging the constitutionality of the statute to carry his case

beyond a reasonable doubt." *James v. State*, 731 So. 2d 1135, 1136 (Miss. 1999). "All doubts must be resolved in favor of validity of a statute." *PHE, Inc. v. State*, 877 So. 2d 1244, 1247 (Miss. 2004) (citation omitted). "Any legitimate interpretation that creates a reasonable doubt of unconstitutionality may prevent the court from striking the statute." *Attorney Gen. v. Interest of B.C.M.*, 744 So. 2d 299, 301 (Miss. 1999) (en banc) (citation omitted). A statute will be struck down "only where the legislation under review be found in palpable conflict with some plain provision of the . . . constitution." *Hood v. State*, 17 So. 3d 548, 551 (Miss. 2009) (citation and internal quotation marks omitted).

If a state's high court has not spoken on a state-law issue, we "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 794 (5th Cir. 2010) (citation omitted). "In making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *Coe*, 695 F.3d at 316 (citation and quotation marks omitted). Accordingly, although we must, if possible, interpret a challenged statute so as to avoid constitutional defect, uncertainties in Mississippi's legal framework are not necessarily to be resolved in the statute's favor. The Mississippi Constitution is to be construed in light of the common law. *See Robinson v. State*, 108 So. 903, 904 (Miss. 1926).

## 2.   Jury Guarantee

Learmonth argues that § 11-1-60(2)(b) violates the Mississippi Constitution's jury guarantee, which provides: "The right of trial by jury shall remain inviolate . . . ."[3] Miss. Const. art. III, § 31. Learmonth contends that § 11-

---

[3] This particular language has remained constant in each of Mississippi's four constitutions. *See* Miss. Const. of 1868, art. I, § 12; Miss. Const. of 1832, art. I, § 28; Miss. Const. of 1817, art. I, § 28. Accordingly, like the parties, we rely on Mississippi authority that predates the current constitution, which was adopted in 1890.

No. 09-60651

1-60(2)(b) infringes upon two rights encompassed by the jury guarantee: (1) the right to have a jury alone find the proper compensatory damages amount, and (2) the right to have that factual finding converted, undisturbed, into a legally binding judgment of equal value. Although the first right surely exists within the jury guarantee, Learmonth has not proven that § 11-1-60(2)(b) violates this right. As to the second right, Learmonth has failed to establish "beyond a reasonable doubt" that it exists as part of the jury guarantee. *James*, 731 So. 2d at 1136.

### a.    Factfinding

Under the Mississippi Constitution, the jury guarantee "extend[s] as far as it did at common law." *Isom v. Miss. Cent. R.R. Co.*, 36 Miss. 300, 309 (1858) (citing *Smith's Adm'r v. Smith*, 2 Miss. (1 Howard) 102, 105 (1834)). It is well established that under the common law jury guarantee, the jury alone makes a factual finding of "compensatory damages"—the amount of money that will compensate the plaintiff for a loss or injury. *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935); *Edwards v. Ellis*, 478 So. 2d 282, 289 (Miss. 1985); *Schoppe v. Applied Chems. Div., Mobley Co.*, 418 So. 2d 833, 836 (Miss. 1982); 1 Dan B. Dobbs, *Law of Remedies* § 1.1, at 3–4 (2d ed. 1993). Under Mississippi law, noneconomic damages are awarded to compensate a tort victim for various forms of psychic, emotional, and reputational injury. *See* Miss. Code Ann. § 11-1-60(1)(a) ("'[n]oneconomic damages' means subjective, nonpecuniary damages arising from," *inter alia*, pain, suffering, loss of consortium, and injury to reputation, and "shall not include punitive or exemplary damages").

Learmonth argues that § 11-1-60(2)(b) invades the jury's exclusive sphere by revising downward any noneconomic damages finding that exceeds $1 million. Sears responds that § 11-1-60(2)(b) simply alters the permissible legal effect of a jury's award.

11

No. 09-60651

To address these arguments, we must first place them in the framework of Mississippi law. Significantly, Mississippi law distinguishes between a jury's verdict and a court's judgment. In the commentary to Mississippi Rule of Civil Procedure 54 (governing "judgments"), the Advisory Committee on Rules states:

> It is important to differentiate the various steps that are part of [creating a final and appealable judgment]. The first distinction is between the adjudication, either by a decision of the court or a verdict of the jury, and the judgment that is entered thereon. The terms "decision" and "judgment" are not synonymous under these rules. The decision consists of the court's findings of fact and conclusions of law; the rendition of judgment is the pronouncement of that decision and the act that gives it legal effect.

This understanding of the procedural mechanics underlying verdict and judgment comports with an early Mississippi Supreme Court pronouncement demonstrating that a court's judgment is based on, but separate from, factual findings: "[W]hether the court pronounces the judgment of the law upon facts found by the jury in cases where a trial by jury is required, or upon facts ascertained in other modes when they are permitted, the judgment is still the award of the law." *Lewis v. Garrett's Adm'rs*, 6 Miss. (5 Howard) 434, 455 (1841). Blackstone provides further support: "The judgment, in short, is the remedy prescribed by law for the redress of injuries." 3 William Blackstone, *Commentaries* *396; *see also* Stanford Young, *Mississippi Trial Handbook* § 37:1 (3d ed. 2012) ("[A] judgment is the conclusion of the law upon the matters contained in the record.").

It is thus appropriate in the instant matter to distinguish between a "verdict" or "award" (a purely factual finding with respect to compensatory damages) and a "judgment" (an act whereby the law that applies to the facts at bar is given effect). *See Learmonth II*, 95 So. 3d at 639 (the amount of noneconomic damages is "an essential, contested, requisite *fact*" (emphasis added)); *City of Jackson v. Locklar*, 431 So. 2d 475, 481 (Miss. 1983) ("The jury's

[damages] verdict is a finding of fact."); *Nichols v. Daniels*, 1 Miss. (1 Walker) 224, 224 (1826) (in a court of law, a judge "pronounce[s] the law arising upon the facts found by the jury"); *cf. Oakes v. State*, 54 So. 79, 80 (Miss. 1910) (a verdict as to *liability* reflects a mixed question of law and fact).

In placing § 11-1-60(2)(b) into this framework, we must interpret the statute "in a manner to avoid constitutional defect if that is possible without doing violence to the language." *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 97 (Miss. Ct. App. 2006) (Southwick, J.) (citing *In re Estate of Smiley*, 530 So. 2d 18, 22–23 (Miss. 1988)). Applying this standard, we conclude that § 11-1-60(2)(b) can be interpreted not to alter a jury's factual damages determination, but instead to impose a strictly legal limitation on the judgment that provides the remedy for a noneconomic injury.

Section 11-1-60(2)(b) provides that the trier of fact "shall not award the plaintiff more than One Million Dollars . . . for noneconomic damages." Because § 11-1-60(2)(b) places a limit on a jury's act of "awarding" noneconomic damages, it might at first blush appear to interfere with a jury's factfinding procedure. Viewing the statute as a whole, however, we do not believe the legislature used the term "award" in the technical or legal sense of finding a damages amount. Subsection (2)(c) provides that "[t]he trier of fact shall not be advised of the limitations imposed by this subsection (2)." Because a jury that is unaware of the $1 million limit cannot apply it when determining facts, § 11-1-60(2)(b) does not invade the jury's factfinding process.[4] Moreover, subsection (2)(c) also provides

---

[4] Under Mississippi law, a judge cannot influence a jury's deliberations to the prejudice of a litigant. *See Gulf Hills Dude Ranch, Inc. v. Brinson*, 191 So. 2d 856, 861 (Miss. 1966). Because informing a jury of the limit on noneconomic damages might influence a jury's damages finding, we believe subsection (2)(c) does no more than formalize this prohibition. The Mississippi Legislature has formalized judicial procedure in the past without controversy. *See Odom v. Roberts*, 606 So. 2d 114, 119–20 (Miss. 1992) (en banc) ("[W]e trust it is uncontroversial today that § 11-1-55 is but declarative of the common law [remittitur] exception to the constitutional [jury] right as existed from the beginning."), *overruled on other grounds by Dedeaux v. Pellerin Laundry, Inc.*, 947 So. 2d 900 (Miss. 2007) (en banc).

that the trial judge shall reduce any award that exceeds the cap. This comports with a judge's role of applying the law to the jury's factual findings—that is, converting the jury's award into "the award of the law." *Lewis*, 6 Miss. at 455; *see also Natchez & S. R.R. Co. v. Crawford*, 55 So. 596, 598 (Miss. 1911) ("[T]he common-law jury, guaranteed by section 31, is a jury with power alone to try issues of fact, and not of law."); *Yazoo & Miss. Valley R.R. Co. v. Wallace*, 43 So. 469, 470–71 (Miss. 1907) ("trial by jury" means "in court under the forms of law, with a judge presiding to direct the proceedings in conformity with it"); *Commercial Bank of Rodney v. State*, 12 Miss. (4 S. & M.) 439, 515 (1845) (Sharkey, C.J., dissenting) ("The law defines rights and provides remedies, but it is for the judiciary to construe the law in its application to the objects of its provisions, and to enforce the remedy."); 3 Blackstone, *supra*, at *116 (the victim of a legal wrong "acquire[s] an incomplete or inchoate right [to damages], the instant he receives the injury; though such right be not fully ascertained till they are assessed by the intervention of the law" (footnote omitted)). Accordingly, we interpret § 11-1-60(2)(b) to provide that legal effect shall not be given to a jury's noneconomic damages finding to the extent the finding exceeds $1 million. The Mississippi Legislature thus has not invaded the jury's factfinding role in enacting § 11-1-60(2)(b).

### b.    Converting Award to Judgment

Learmonth argues in the alternative that the common law jury right includes the right to have a jury's compensatory damages finding translated dollar for dollar into a binding judgment. Because Learmonth has offered no dispositive authority supporting this argument, she has not met her burden to "carry [her] case beyond a reasonable doubt." *James*, 731 So. 2d at 1136.

Before addressing Learmonth's argument, we note that the Mississippi cases Sears has offered establish that the Mississippi Supreme Court has historically recognized the legislature's authority to alter legal remedies. In

No. 09-60651

*Walters v. Blackledge*, 71 So. 2d 433, 444–45 (Miss. 1954), the court upheld a statutory workmen's compensation scheme that abrogated common law causes of action and limited the amount an injured employee's recovery. *See also Wells v. Panola Cnty. Bd. of Educ.*, 645 So. 2d 883, 895 (Miss. 1994) (interpreting *Walters* as permitting the legislature to "alter or substitute" common law remedies). In *Maranatha Faith Center, Inc. v. Colonial Trust Co.*, 904 So. 2d 1004, 1007 (Miss. 2004), the court held that "a writ of execution may be issued against a chose in action," even though this means of satisfying a judgment was not permitted at common law. This was so, the court explained, because the common law rule had been abrogated by legislative enactment. *Id.* at 1006. In *Natchez & Southern Railroad Co.*, 55 So. at 599–600, the court upheld the legislature's expansion of a personal injury victim's right to recovery through replacement of the common law contributory negligence rule with a comparative negligence regime. The Mississippi Supreme Court has also upheld statutes of limitations, which impose temporal restraints on tort victims' recovery. *See Phipps v. Irby Constr. Co.*, 636 So. 2d 353, 354–57 (Miss. 1993) (en banc); *Smith v. Fluor Corp.*, 514 So. 2d 1227, 1231–32 (Miss. 1987). Further, the legislature's authority to alter personal injury remedies is consistent with its power to "set[] public policy" in matters of Mississippi tort law. *Pinnell v. Bates*, 838 So. 2d 198, 202 (Miss. 2002) (en banc).

To be sure, each of the cases Sears has offered is distinguishable in some measure from the case at bar, and we do not intend to overstate their significance. *See Coe*, 695 F.3d at 316. Nor does our *Erie*-guess imply that the legislature's authority to alter common law remedies is unlimited; we address only those constitutional arguments Learmonth has raised. Nonetheless, the authority presented by Sears sets a difficult stage for Learmonth's constitutional challenge, which is already subject to a heavy burden of persuasion. *James*, 731 So. 2d at 1136. Moreover, though we accept that the cases on which Sears relies

15

are not conclusive as to § 11-1-60(2)(b)'s constitutionality, Learmonth cannot prevail on her argument that because the legislature has never before enacted a compensatory damages cap, such a cap *ipso facto* violates the Mississippi Constitution. *See State v. Hill*, 11 So. 789, 790 (Miss. 1892) (that a legislatively created office is "unknown to the constitution" does not render that office unconstitutional); *Noonan v. State*, 9 Miss. 562, 573 (1844) (rejecting the argument that because the common law was present at the Mississippi Constitution's adoption, the legislature is not permitted to alter or repeal common law rules or principles). Under Mississippi law, it is not Sears' burden to prove that § 11-1-60(2)(b) is constitutional; rather, it is Learmonth's burden to prove it unconstitutional. *James*, 731 So. 2d at 1136.

Learmonth has failed to establish that the jury's award represents the remedy to which she is entitled at law. The controlling authority she offers provides only that Mississippi's jury guarantee permits a litigant to have a jury alone find the proper compensatory damages amount. *See Edwards*, 478 So. 2d at 289; *Yazoo & Miss. Valley R.R. Co. v. Wallace*, 45 So. 857, 858 (Miss. 1908) ("[The Mississippi Supreme Court] never interferes with [a jury's] *finding* as to damages." (emphasis added)); *S. R.R. Co. v. Kendrick*, 40 Miss. 374, 390 (1866); *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998); *Dimick*, 293 U.S. at 486; *St. Louis, Iron Mountain, & S. Ry. Co. v. Craft*, 237 U.S. 648, 661 (1915) (a factual finding cannot be altered on appeal).[5]

Nor does Learmonth's supplemental authority persuade. She offers decisions in which other states' supreme courts have struck down statutory

---

[5] Citing *Illinois Central Railroad Co. v. Barron*, 72 U.S. 90 (1866), Learmonth also argues that compensatory damages cannot be "fixed." *Barron* concerned a state statute that provided a wrongful death cause of action to the deceased's personal representative for the exclusive benefit of the widow and next of kin. The statute limited damages for "pecuniary injuries" under this cause of action to $5,000. The Court did not address the propriety of the damages cap; it held that the widow or next of kin need not have a valid claim of support from the deceased to recover under the statute. *Id.* at 106.

damages caps. *See Miller v. Johnson*, 289 P.3d 1098, 1138 (Kan. 2012) (Beier, J., concurring in part and dissenting in part) (collecting state supreme court decisions upholding and striking down damages caps). These courts have held that the common law jury guarantee cannot be parsed such that "the jury is allowed to determine facts which go unheeded when the court issues its judgment" because doing so "pays lip service to the form of the jury but robs the institution of its function." *Lakin v. Senco Prods., Inc.*, 987 P.2d 463, 473 (Or. 1999) (quoting *Sofie v. Fibreboard Corp.*, 771 P.2d 711, 721 (Wash. 1989)). Another state supreme court has held that an individual has a "right to the damages awarded by the jury." *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 642 (Mo. 2012).

We note one prominent observer's comment that this line of decisions seems to contradict "the usual notion that the law prescribes the remedy and its measure." 2 Dobbs, *supra,* § 8.8 n.23. Moreover, the hallmark of our constitutional inquiry is the extent of the jury guarantee at common law. *Isom*, 36 Miss. at 309. Although the non-Mississippi decisions Learmonth offers rely on common law doctrines that we accept as valid, we do not believe these doctrines undermine the proposition that the law defines the permissible remedy. *See Watts*, 376 S.W.3d at 638–39 (citing authority providing that common law permits an award of noneconomic damages, and that a judge can set aside a verdict only upon finding it was based on passion or prejudice); *Lakin*, 987 P.2d at 471 (at common law, a judge that finds a verdict excessive must grant a new trial (citing *Wood v. Gunston*, 82 Eng. Rep. 864, 867 (1655))); *cf. Progressive Cas. Ins. v. All Care, Inc.*, 914 So. 2d 214, 224 (Miss. Ct. App. 2005) (en banc) ("Called upon to resolve disputes, we use the jury system to allow citizenry to allocate justice *as the law permits*." (emphasis added)). Accordingly, we cannot adopt these courts' holdings. *See Hood*, 17 So. 3d at 551.

No. 09-60651

Learmonth recognizes that other states' supreme courts have struck down damages caps based on the judgment/verdict distinction, but argues that these decisions are inapposite because these states' constitutions, unlike Mississippi's, do not include an "inviolate" jury guarantee. *See, e.g.*, *Etheridge v. Med. Ctr. Hosps.*, 376 S.E.2d 525, 528–29 (Va. 1989) (upholding a damages cap based on a jury trial clause providing that "trial by jury is preferable to any other, and ought to be held sacred"). We disagree. A comparison of state high court decisions shows that a jury guarantee's "inviolability" is not dispositive of the question before us. *Compare Watts*, 376 S.W.3d at 644 (rejecting *Etheridge* and invalidating a damages cap based on an "inviolate" jury right), *with Gourley ex rel. Gourley v. Neb. Methodist Health Sys., Inc.*, 663 N.W.2d 43, 75 (Neb. 2003) (per curiam) (adopting *Etheridge*'s reasoning and upholding a damages cap under an "inviolate" jury right), *and Kirkland v. Blaine Cnty. Med. Ctr.*, 4 P.3d 1115, 1117, 1120 (Idaho 2000) (same). Moreover, "inviolability" simply means that the jury right is protected absolutely in cases where it applies; the term does not establish what that right encompasses. *See Re/Max Real Estate Partners, Inc. v. Lindsley*, 840 So. 2d 709, 713 (Miss. 2003) (en banc) (although the jury right is "inviolate," it does not include a right to a jury in chancery cases).

Learmonth also points to Mississippi trial courts that have refused to apply § 11-1-60(2)(b) on jury guarantee grounds. In *Carter v. Interstate Realty Management Co.*, the court held that the common law remittitur doctrine demonstrates § 11-1-60(2)(b)'s incongruity with the jury right: "Judges in Mississippi may *suggest* amounts different from what a jury awards, but . . . may not arbitrarily impose the same. . . . Such a procedure recognizes the high esteem with which we in Mississippi hold . . . the right to trial by jury." Cause No. 14-CI-09-0019, slip op. at 5–6 (Coahoma Cnty. Cir. Ct. Apr. 20, 2012); *see also Schoppe*, 418 So. 2d at 836 (under remittitur, "[a]wards fixed by juries are

18

No. 09-60651

not merely advisory and will not ordinarily be set aside"). Despite the great respect that is due a state court's decision on state-law matters, we are compelled to disagree. *See Cerda*, 612 F.3d at 794; *Hood*, 17 So. 3d at 551. We first observe that other Mississippi trial courts do not share the *Carter* court's view. *See Bryant ex rel. Bryant v. McCarty*, Cause No. CV2006-0261CD (DeSoto Cnty. Cir. Ct. Aug. 27, 2009); *Lymas v. Double Quick, Inc.*, Civ. No. 2007-0072 (Humphreys Cnty. Cir. Ct. Sept. 17, 2008). Further, Mississippi's remittitur doctrine concerns only a court's limited power to set aside a jury's factual finding—i.e., its award—upon making certain findings of its own. *See Dedeaux*, 947 So. 2d at 903 n.1 (remittitur is permitted only if the integrity of a jury's factual finding is put into serious doubt). We can find no Mississippi case suggesting that remittitur prohibits the legislature from altering the law that provides a plaintiff her remedy, and which a judge is bound to apply. *See Lewis*, 6 Miss. at 455; *Nichols*, 1 Miss. at 224; 3 Blackstone, *supra*, at *396 ("The judgment, though pronounced or awarded by the judges, is not their determination or sentence, but the determination and sentence of *the law*."). Indeed, the distinction between a non-discretionary damages cap and a remittitur determination that depends on judicial findings is consistent with the traditional Anglo-American division between legislative policymaking (characterized by an "initial policy determination of a kind clearly for nonjudicial discretion" and lack of a "judicially discoverable and manageable standard") and judicial action (which "must be governed by *standard*, by *rule*," and "must be principled, rational, and based upon reasoned distinctions"). *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004).

In another decision offered by Learmonth, a Mississippi trial court held that § 11-1-60(2)(b) violates the jury guarantee because Mississippi law requires a verdict to be "reasonable and based upon the preponderance of the evidence." *See Tanner v. Eagle Oil & Gas Co.*, Civ. No. 111-0013, slip op. at 10 (Jasper

19

Cnty. Cir. Ct. Oct. 22, 2012). However, Learmonth offers no authority supporting the proposition that properly reaching a verdict alters the law that provides a tort victim's remedy.

In sum, Learmonth has not shown that § 11-1-60(2)(b) is in "palpable conflict" with the right to have a jury alone find the amount of compensatory damages, or that the common law jury guarantee includes the right to a judgment equal to the jury's damages finding notwithstanding the permissible legal remedy. *Hood*, 17 So. 3d at 551. Accordingly, the Mississippi Constitution's Jury Trial Clause does not compel us to invalidate § 11-1-60(2)(b)'s application in this matter.

### 3.    Separation of Powers

Learmonth further argues that § 11-1-60(2)(b) violates the Mississippi Constitution's Separation of Powers Clauses, which provide:

> The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. art. I, §§ 1, 2. She contends that § 11-1-60(2)(b) directly conflicts with remittitur (a judicial procedure), and is facially invalid as a legislatively promulgated procedural rule. We disagree.

### a.    Conflict with Judicial Procedure

Learmonth incorrectly argues that § 11-1-60(2)(b) constitutes legislative interference with judicial remittitur. Under Mississippi law, remittitur is permitted if the jury's verdict has been influenced by "bias, passion, or

prejudice," or is "contrary to the overwhelming weight of credible evidence." *Dedeaux*, 947 So. 2d at 903 n.1 (citing Miss. Code Ann. § 11-1-55). Remittitur thus applies only if there is strong reason to question the integrity of the jury's *factual findings*. As we have discussed, § 11-1-60(2)(b) must not be read to alter a jury's deliberations or its factual findings, but instead to set a non-discretionary limit on the permissible legal remedy. *See Interest of B.C.M.*, 744 So. 2d at 301. Because § 11-1-60(2)(b) does not apply to the verdict, it cannot affect a trial court's application or non-application of remittitur. Indeed, a trial judge conceivably could suggest remittitur and—if the suggested noneconomic damages award is accepted by the parties, yet still exceeds $1 million—apply § 11-1-60(2)(b) to the judgment.[6]

Learmonth further contends that, in enacting § 11-1-60(2)(b), the legislature was required to provide either procedural safeguards that parallel those available under the remittitur doctrine—for instance, the option to have a new trial—or some other benefit, such as a minimum award "where a jury fails to award monetary damages commensurate with the injuries and damages proven at trial." As in the proceedings below, Learmonth has failed to provide any apposite authority in support of this argument.

Relying on a concurrence in a Mississippi Supreme Court decision, Learmonth also argues that the legislature cannot dictate what constitutes an appropriate award if the judiciary has established a procedure or guideline for determining the award's suitability. *See Wheat v. Wheat*, 37 So. 3d 632, 644 (Miss. 2010) (Kitchens, J., concurring). Even ignoring that a concurrence does not set out binding authority, we note that *Wheat* concerned the guidelines that

---

[6] This court and the district court have referred to § 11-1-60(2)(b)'s application as a "remittitur." *Learmonth I*, 631 F.3d at 730, 739–40. As we have discussed, § 11-1-60(2)(b) does not set out a remittitur requirement. Our prior, incorrect use of that term does not alter any of our conclusions today.

the Mississippi Chancery Court applies in granting child support. The concurrence's conclusion rests upon the Mississippi Constitution's grant of "full jurisdiction" to the Chancery Court over matters concerning "minor's business." Miss. Const. art. 6, § 159. Even if we accepted that *Wheat* stands for the principle that Learmonth proposes, we could not extend its application from equity matters to cases at law. *Coe*, 695 F.3d at 316.

### b.    Facial Challenge

Learmonth contends that § 11-1-60(2)(b) constitutes a legislatively promulgated procedural rule, and is thus invalid under Mississippi law. *See Magyar v. State*, 18 So. 3d 807, 810 (Miss. 2009) (en banc); *Wimley v. Reid*, 991 So. 2d 135, 138 (Miss. 2008) (en banc); *Hall v. State*, 539 So. 2d 1338, 1345 (Miss. 1989) (en banc). She first argues that a legislative act cannot affect the determination of damages in any measure because this "is a judicial, and not a legislative, power; one belonging to courts and juries, and not to law-makers, or legislatures, under our system of government." *Isom*, 36 Miss. at 315. Learmonth has removed this quotation from its proper context. In *Isom*, a railroad company had built a road-bed on the plaintiff's land, for which the plaintiff sought damages. By statute, a jury assessing damages in a takings case was required to offset recovery by "the benefits resulting to the owner, by reason of the road running through his land." *Id.* at 310. Mississippi's constitution at the time required "just compensation" for any taking. The *Isom* court held that the legislature, by requiring an offset of damages based on the railroad's improvement to the land, had impermissibly defined "just compensation" under the Mississippi Constitution. *Id.* at 315. *Isom* thus does not stand for the broad proposition Learmonth forces upon it—that the legislature cannot alter any law touching upon a jury award. Rather, the *Isom* court held that only the judiciary may determine the Mississippi Constitution's meaning.

No. 09-60651

Next, Learmonth argues broadly that the legislature cannot interfere with a compensatory damages judgment because "trials are the core activity of the judiciary," *Hall*, 539 So. 2d at 1346, and "[a]ny legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional," *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 297 (Miss. 2003) (en banc) (quoting 16A Am. Jur. 2d *Constitutional Law* § 286, at 209–10 (1998)). *See also In re Fiscal Year 2010 Judicial Branch Appropriations*, 27 So. 3d 394, 395–96 (Miss. 2010) (en banc); *Alexander v. State ex rel. Allain*, 441 So. 2d 1329, 1345 (Miss. 1983) (en banc). More specifically, she contends that § 11-1-60(2)(b)'s command that a judge "shall" reduce any award exceeding $1 million intrudes on the judiciary's function. *See Miller v. Hay*, 143 Miss. 471, 483 (1926) (en banc) (the legislature, in exercising its power to define a public officer's duties, cannot infringe on the judiciary's exclusive power to abate a pending suit).

Learmonth's argument proves too much. By its very nature, non-procedural law affects judicial functions. The legislature's definition of civil and criminal causes of action, for example, alters the elements a jury or judge must consider to find liability or grant summary judgment. To accept that the constitutional separation of powers prohibits the legislature from limiting a legal remedy would be to prohibit the legislature from enacting practically any change to substantive law. *Cf. Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 159 (Miss. 2011) (en banc) ("[T]he Legislature is free to establish, as a matter of substantive law, any contract remedy it finds appropriate."). Moreover, by Learmonth's logic, the legislature would be prohibited even from limiting tort damages after abrogating and replacing a common law cause of action, which she concedes is a valid legislative act. *See Walters*, 71 So. 2d at 445.

The Mississippi Supreme Court has defined procedure as "[t]he mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the rights, and which, by means of the

proceedings, the court is to administer; the machinery, as distinguished from its product." *Jones v. City of Ridgeland*, 48 So. 3d 530, 537 (Miss. 2010) (en banc). Once again, § 11-1-60(2)(b) defines a permissible legal remedy. The statute's command that a judge "shall" limit a noneconomic damages judgment is tantamount to a command that a judge shall apply substantive law. This legislative tautology does not represent an impermissible intrusion on any judicial function. If it did, the Mississippi Legislature could not codify common law remittitur procedures, which it has done uncontroversially. *See Odom*, 606 So. 2d at 119–20.

Finally, Learmonth frames her separation of powers challenge as an issue of legislative authority. If the legislature can limit noneconomic damages to $1 million, Learmonth argues, then nothing prevents it from limiting noneconomic damages to one dollar. *See Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 691 S.E.2d 218, 223 (Ga. 2010) (citing *Smith v. Dep't of Ins.*, 507 So. 2d 1080, 1089 (Fla. 1987) (per curiam)). This would purportedly "end the civil justice system in the [S]tate of Mississippi." We are not convinced that this argument properly falls under a separation of powers analysis. In any event, we believe that Learmonth has overlooked the possibility that, at least under some circumstances, the Mississippi Constitution's Due Process Clause or Remedy Clause might impose substantive constraints on the legislature's authority to cap compensatory damages. *See* Miss. Const. art. III, § 14; *id.* § 24 ("[E]very person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law . . . ."); R. Brittain Virden, *Tort Reform and the Mississippi Constitution of 1890*, 63 Miss. L.J. 797, 809–13, 819–20 (1994). Learmonth has waived any Due Process or Remedy Clause challenge, however, because although she raised such arguments below, she has not properly

No. 09-60651

renewed them on appeal.[7] *See In re Katrina Canal Breaches Litig.*, 620 F.3d at 459 n.3. The fact that *amicus* Mississippi Association for Justice included a Remedy Clause argument in its brief does not alter this conclusion. *See United States v. El-Mezain*, 664 F.3d 467, 539 n.32 (5th Cir. 2011).

Learmonth thus has failed to establish beyond a reasonable doubt that § 11-1-60(2)(b) violates Mississippi's constitutional separation of powers.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[7] Learmonth argued below that due process requires the legislature to permit some means of contesting the adequacy of a noneconomic damages award that has been reduced under § 11-1-60(2)(b). As we discussed in Section II.B.3.a., she offered a slightly different argument on appeal as part of her separation of powers challenge, but we rejected it because she provided no supporting legal authority below or in her opening brief. She greatly expanded on this argument in her reply brief, invoking for the first time the *quid pro quo* due process analysis set out in *Wells*, 645 So. 2d at 891–92, 894. However, she framed her argument below as pertaining to a vested property right in the jury's verdict, which appears to us to be founded on legal principles different from those implicated in the *quid pro quo* doctrine. In these circumstances, Learmonth has waived her *quid pro quo* due process argument. *See In re Katrina Canal Breaches Litig.*, 620 F.3d at 459 n.3; *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993).