# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30001
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2016

Lyle W. Cayce
Clerk

SHELTER PRODUCTS, INCORPORATED,

     Plaintiff - Appellee

v.

AMERICAN CONSTRUCTION HOTEL CORPORATION,

     Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:12-CV-2533

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

     American Construction Hotel Corporation served as general contractor for the construction of a hotel in Bossier City, Louisiana. American subcontracted with Cratus Development, LLC, to perform the framing work for the project. Cratus then entered into a bid acceptance agreement with

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30001

Shelter Products, Incorporated, wherein Shelter agreed to sell Cratus the building materials for the project.

In connection with the bid acceptance agreement, Shelter, Cratus, and American signed a joint check agreement. "Joint checks are often used in the construction industry to ensure that material suppliers get paid and to manage potential lien claims." Michael B. Lubic and Jennifer M. Phelps, *Contractors' Joint-Check Agreements: Use at Your Peril*, 20 AM. BANKR. INST. J. 16, 16 (March 2001). As with most such agreements, American agreed that it would make payment to Shelter and Cratus by joint check for the materials Shelter supplied for the project. But unlike the typical joint check agreement, this one also stated:

> If Cratus Development does not start or complete work on this project, and/or becomes past due with Shelter Products, Inc. to the extent that Shelter Products, Inc. can no longer extend credit to Cratus Development[,] American Construction will make payments directly to Shelter Products, Inc. for all outstanding and unpaid invoices for materials delivered to the jobsite, and;
>
> 1) American Construction agrees to purchase remaining unshipped material at the prices agreed upon by Cratus Development. Should this item become necessary, a copy of the original Bid Acceptance will be provided to American Construction by Shelter Products, Inc.

Shelter and Cratus executed the joint check agreement on October 3, 2011. The next day, American's president hand-wrote "NOT TO EXCEED $92,291"[1] at the bottom of the document and signed it, and another American employee returned the fully executed agreement to Cratus. The record is unclear as to when Shelter received the fully executed agreement. Presumably, Shelter got the document soon after American executed it because

---

[1] The bid acceptance agreement provided that the amount of materials Shelter was selling Cratus for the project totaled $92,291.

2

Shelter began shipping materials to the project the next week. In any case, the parties agree that Shelter had the fully executed document in its files no later than mid-December.[2] Shelter received its first and only joint check from American on November 17, 2011 in the amount of $20,352.

Shelter notified American and the project's owner in February 2012 that there was an outstanding balance of $129,770.83 for the materials it supplied but neither party paid up. Shelter later filed this lawsuit against American, Cratus, and the project's owner. Shelter alleged, in pertinent part, that Cratus did not pay for all the supplies it ordered and that American breached the joint check agreement by failing to pay Cratus's outstanding debts.

American and Shelter filed cross motions for summary judgment. The district court ruled that the joint check agreement constituted a suretyship agreement in which American guaranteed the debt of Cratus in favor of Shelter up to $92,291. Rather than proceed to trial, Shelter and American stipulated as to the unpaid invoice balance, and the district court entered a consent judgment against American and in favor of Shelter for $71,939, which is the amount of the suretyship ($92,291) less the undisputed single payment by American to Shelter ($20,352).[3]

In this appeal, American challenges the district court's legal basis for determining its liability as a surety. We review "the legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court to determine whether summary

---

[2] Shelter says it became aware of the "not to exceed" language on December 19, 2011 when Barbara Graves (an American employee) asked Michelle Moore (a Shelter employee) about some details on an invoice. Graves explained that they wanted to be sure everyone was on the same page because the invoices exceeded the $92,291 limitation American had placed on the joint check agreement. Moore then looked at the joint check agreement (which was apparently in Shelter's files) and saw the handwritten notation.

[3] Shelter voluntary dismissed with prejudice its claims against the property owner, Ganga, LLC. A default judgment was entered against Cratus.

judgment was appropriate." *Gonzalez v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004) (citation omitted).   Interpretation of a contract is a purely legal matter, which we also review *de novo*.  *See Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993).   Because this case arises under diversity jurisdiction, the substantive law of the forum state applies.  *Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258 (5th Cir. 2013).

Under Louisiana law, suretyship is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."  LA. CIV. CODE ANN. art. 3035.  A "contract is accessory when it is made to provide security for the performance of an obligation."  *Id.* at 1913.  When the secured obligation arises from a contract, that contract is the principal contract.  *Id.*

Here, the principal contract is the bid acceptance agreement between Shelter and Cratus.  Shelter, Cratus, and American then entered into an accessory contract (that is, the joint check agreement) which sought to ensure that Shelter was paid for the materials it supplied pursuant to the principal contract.  American guaranteed payment "for all outstanding and unpaid invoices for materials delivered to the jobsite" and for "remaining unshipped material at the prices agreed upon by" Cratus.

The joint check agreement meets all the formal requirements of suretyship: it is express and in writing.  *See* LA. CIV. CODE ANN. art. 3038.  The fact that American's president added the "not to exceed" language before signing the contract does not render it invalid.  It simply limits American's liability to that amount.[4]  Shelter's acceptance of the contract is presumed, and

---

[4] Shelter argued below that the joint check agreement should be treated as a contract for the sale of movables.  It claimed that, under Louisiana sales law, the limiting language American added to the contract was a material alteration that did not become part of the agreement and, therefore, the agreement is enforceable to the full extent of the debt.  The district court rejected this argument and found that under the governing suretyship rules,

No. 16-30001

suretyship was established when Shelter received the executed document.  *See id.* at 3039.  We find, therefore, that the district court correctly held that the joint check agreement created a binding suretyship contract.

Based on this legal finding and the parties' stipulated facts, the district court issued a consent judgment.  American argues in its brief that (1) based on the language in the joint check agreement, it is only obligated to pay Cratus' debts if Cratus is past due to the extent Shelter can no longer extend credit to Cratus; and (2) there is no evidence in the record establishing that Shelter could not extend further credit to Cratus.  Because American did not raise this argument before the district court, it is forfeited.  *See, e.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).  We note, however, that the argument is unpersuasive, as there appears to be no genuine dispute that Cratus consistently failed to pay its debts such that Shelter could no longer extend credit on its behalf.

**\* \* \***

We thus AFFIRM the judgment of the district court.

---

Shelter cannot enforce the agreement for more than the amount American expressly agreed to in writing.  We agree.

5