RANDOLPH, Justice,
for the Court:
¶ 1. In August 2005, Lisa Learmonth sustained severe injuries in an auto/truck collision with a vehicle owned by Sears, Roebuck & Company (“Sears”) and driven by its employee. Learmonth filed suit against Sears in the United States District Court for the Southern District of Mississippi — Eastern Division (“district court”). The jury returned a unanimous general verdict for Learmonth in the amount of $4 million. The “Special Interrogatory and Jury Verdict” form submitted to the jury did not instruct the jury to itemize the compensatory damages into separate categories.
¶ 2. In Sears’ post-trial “Motion for New Trial, or Alternatively, for a Remittitur” (“Motion for New Trial”), it posited that $2,218,905.60 of the jury verdict was for noneconomic damages. Learmonth used that same figure in post-trial responses. Sears’ figure was accepted by both the district court and the United States Court of Appeals for the Fifth Circuit (“Fifth Circuit”) in their respective analyses. Regarding Sears’ “Motion for New Trial,” the district court held, in pertinent part, that it “cannot conclude that the jury verdict is so excessive, so ‘contrary to right reason, ’ as to warrant a new trial or remittitur.” (Emphasis added.) Nonetheless, based on Mississippi Code Section 11 — 1—60(2)(b), the district court “remitted]” $2,218,905.60 of *635 the verdict to $1 million, and entered judgment for $2,781,094.40. See Miss.Code Ann. § 11 — 1—60(2)(b) (Supp.2011).
¶ 8. Sears appealed that judgment to the Fifth Circuit. Learmonth cross-appealed and challenged the constitutionality of Section 11 — 1—60(2)(b) under the separation-of-powers and right-to-jury-trial provisions of the Mississippi Constitution. See Miss. Const. art. 1, §§ 1, 2; art. 8, § 31 (1890). The Fifth Circuit found that this was an “important question of state law ... for which there is no controlling precedent from the Supreme Court of Mississippi.”[1] Learmonth, 631 F.3d at 739. Pursuant to Mississippi Rule of Appellate Procedure 20, the Fifth Circuit certified the following question to this Court, “[i]s Section 11 — 1— 60(2) of the Mississippi Code, which generally limits non-economic damages to $1 million in civil cases, constitutional?” Id. at 739^40.
¶4. Following certification, this Court handed down its decision in InTown Lessee Associates, LLC v. Howard, 67 So.3d 711 (Miss.2011). In InTown Lessee, two plaintiffs each were awarded $2 million general jury verdicts. See id. at 713, 717. On appeal, the defendant (InTown) faulted the trial court, arguing it should have provided the jury with “a verdict form that would require the jury to segregate economic from non-economic damages[,] enabling the trial judge to perform her statutory duty to apply the [$1 million limitation] on non-economic damages.” Id. at 722. Yet InTown, like Sears in this case, “did not object to the jury instruction on the form of the verdict, and ... did not request a jury instruction that the form of the verdict should segregate economic damages from noneconomic damages.” Id. We found that InTown “cannot complain on appeal that such an instruction was not given.” Id. at 724 (citing King v. State, 857 So.2d 702, 720 (Miss. 2003)). This Court added that it would “not engage in speculation or conjecture, and it would be nothing more than supposition for us to try to guess what amount the jury awarded in economic damages and what amount it awarded in noneco-nomic damages.” Id. at 724. Accordingly, this Court unanimously affirmed the judgment of the trial court.[2] See id.
¶ 5. Thereafter, we entered an order for supplemental briefing in the case sub judi-ce.[3] It stated, in pertinent part, that:
Section 11 — 1—60(2)(b) provides that “(b) In any civil action filed on or after September 1, 2004, other than those actions described in paragraph (a) of this subsection, in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars ($1,000,000) for noneconomic damages.” Miss.Code Ann. § 11 — 1— 60(2)(b) (Supp.2011) (emphasis added). In the case sub judice, the record reflects that “the jury found Sears liable for Learmonth’s injuries and awarded her $4 million in compensatory damages. The verdict on its face did not divide the award into separate categories.... ” [Learmonth, 631 F.3d at 730] (emphasis added). However, Sears and Lear-month have stipulated that the total award included $2,218,905[.60] in non- *636 economic damages. See id. at [739]. Supplemental briefing is required to address the following issue:
(1) In light of the language in [Section] ll-l-60(2)(b) that “the trier of fact” cannot “award the plaintiff’ more than $1 million for noneconomic damages, this Court’s recent pronouncement on the effect of failing to request a jury instruction that segregated economic damages from noneco-nomic damages [InTown Lessee ], and the statement that the jury did not divide the award into separate categories to distinguish between economic and noneconomic damages, what fact(s) and/or legal authority exist for this Court to accept a stipulation regarding the amount of noneconomic damages found by the jury?
(Emphasis in original.)
¶ 6. In supplemental briefing, the parties disputed the existence, vel non, of a post-trial stipulation regarding noneconomic damages. On that point, no one alleges that a written or oral stipulation was entered before the jury completed its deliberations and rendered its verdict. The record reveals just the opposite. The “Pretrial Order” provided only that the following facts “are established by the pleadings or by stipulation or admission”:
[t]he accident occurred at the intersection of Highway 15 and Highway 485 on August 26, 2005. [Learmonth] was operating her green Chevrolet automobile at the time of the accident. [The Sears employee] was acting as the agent and employee of [Sears]. [Learmonth] was taken from the scene of the accident to Neshoba General Hospital, and was thereafter air-lifted via helicopter to University Medical Center, where she was hospitalized for several days as a result of injuries she sustained in the subject accident.
The “Pretrial Order” added that the “contested issues of fact” included “[t]he nature, extent, duration and cause of [Lear-month’s] alleged injuries.” At trial, Sears stridently contested not only damages, but also liability. The jury was then properly instructed, which included the following:
any statements ... or arguments made by lawyers are not evidence in the ease.[4] ... [I]t is your ... interpretation of the evidence that controls in the case.[5]
[[Image here]]
[Y]ou are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.
Now, I have said that you can consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate. You are the sole judges ... of ... the weight to be given to ... testimony.
[[Image here]]
You may ... accept or reject the testimony of any witness in whole or in part.
[[Image here]]
*637 [In] arriving at [Learmonth’s] damages you must determine an amount that is fair compensation for all of [Lear-month’s] damages.
[[Image here]]
If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision but only with as much definiteness and accuracy as the circumstances permit.
You must use sound discretion in affixing an award of damages and in drawing reasonable inferences where you find them appropriate from the ... evidence.
As to the “elements of damages,” the jury specifically was instructed that Learmonth had incurred “past medical expenses” of $90,098.42. But it was further instructed to determine the following, as “you find them proved by a preponderance of the evidence”: “[m]edical expenses which you believe from the evidence that [Lear-month] will likely incur in the future discounted to net present value[,]” and “[l]oss of future wage-earning capacity, ... discounted to net present value.”[6] Before the jury began its deliberations, a special interrogatory and verdict was requested, but it did not request a finding to establish as fact the matter now at issue, i.e., a jury-finding of noneconomic damages in an amount in excess of $1 million. Therefore, while Learmonth curiously did acquiesce to Sears’ presumptive calculations in her post-trial filings, we find no proof that the parties entered into a binding stipulation. Moreover, neither party requested a special verdict segregating economic from noneconomic damages, which may be requested under Rule 49 of the Federal Rules of Civil Procedure. See Fed. R.Civ.P. 49. Compare with Miss. R. Civ. P. 49.
¶ 7. After considering the briefs and arguments and reviewing the entire record presented, we conclude that, because the “trier of fact” (the jury) entered a general verdict of $4 million, we cannot know with any degree of assurance that “they” (the jury) awarded Learmonth more than $1 million for noneconomic damages. Miss.Code Ann. § 11-1-60(2)(b). Thus, under InToum Lessee, our ruling upon the constitutionality of Section 11—1— 60(2)(b) in this case would require engaging in “speculation[,]” “conjecture[,]” “supposition[,]” and guesswork regarding “what amount the jury [may have] awarded in economic damages and what amount it [may have] awarded in noneconomic damages.” InTown Lessee, 67 So.3d at 724. While the Fifth Circuit is bound only by Mississippi substantive law, we decline to answer a certified constitutional question outside the clear context of its application. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). In other words, consistent with our holding in In-Toum Lessee, we decline to answer a certified question which, if the case were directly appealed to this Court, would not be reached under the facts presented. The constitutionality of a statute is not to be addressed “abstractly, speculatively, or in *638 the manner of an academic discussion[,]” but rather in the context of its clear application. 16 Am.Jur.2d Constitutional Law § 117. See also U.S. v. Nat’l Dairy Prods. Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963) (quoting U.S. v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)) (“The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases[.]”); Gov’t & Civic Employees Org. Comm., CIO v. Windsor, 353 U.S. 364, 366, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957) (citing Rescue Army v. Mun. Court of City of Los Angeles, 331 U.S. 549, 575, 584, 67 S.Ct. 1409, 1423, 1427, 91 L.Ed. 1666 (1947)) (in the interest of avoiding “the adjudication of abstract, hypothetical issues[,] ... courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form.”); Alabama State Fed’n of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389-90, 89 L.Ed. 1725 (1945) (internal citations omitted) (the “considered practice” of the United States Supreme Court is “not to decide abstract, hypothetical or contingent questions, ... or to decide any constitutional question except with reference to the particular facts to which it is to be applied.... ”).
¶ 8. The “form” of the “constitutional contentio[n]” presented here is hardly “concrete,” but more akin to the Yazoo Clay native to our region, a substance of great plasticity.[7] Windsor, 353 U.S. at 366, 77 S.Ct. 838. What the jury should have, could have, may have, and/or possibly accepted as worthy evidence, and the component parts of their resulting general verdict, is known only to them.[8] For this *639 Court, post-trial pleadings and arguments based on Sears’ hypotheses are not a sufficiently reliable basis for us to undertake a decision declaring Section 11—1—60(2)(b) constitutional or unconstitutional. See Jones v. Harris, 460 So.2d 120, 122 (Miss.1984) (quoting Western Line Consol. Sch. Dist. v. Greenville Mun. Separate Sch. Dist., 433 So.2d 954, 958 (Miss.1983)) (“Courts have a solemn duty to avoid passing upon the constitutionality of any law expressed by the people through their Legislature unless compelled to do so by an issue squarely presented to and confronting a court in a particular case.”). Had Sears taken the precautionary step to query the jury regarding the amount of noneconomic damages in a special interrogatory or special verdict, then we would possess knowledge of this indispensable element, required to exist before the statutory limitation is considered. Absent knowledge of the jury’s finding, we lack the omniscient power to ascertain what we consider an essential, contested, requisite fact,[9] contrary to the dissent’s assertion otherwise. As we conclude that the issue was not “squarely presented” by the parties, our consideration of the certified question is foreclosed, and the request to answer the certified question is declined. Jones, 460 So.2d at 122 (quoting Western Line, 433 So.2d at 958). See also Miss. R.App. P. 20(a) (“The Supreme Court may, in its discretion, decline to answer the questions certified to it.”).
¶9. CERTIFIED QUESTION DECLINED.
WALLER, C.J., CARLSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Regarding Sears’ direct appeal, the Fifth Circuit affirmed "the judgment of the district court insofar as it denied a new trial....” Learmonth v. Sears, Roebuck & Co., 631 F.3d 724, 740 (5th Cir.2011).

. Kitchens, J., writing. Carlson and Dickinson, P.JJ., Randolph, Lamar, Chandler, Pierce, and King, JJ., concurring. Waller, C.J., not participating.

.See Miss. R.App. P. 20(f) ("additional briefing will be upon directive of the Supreme Court.”).

. This point seems lost on the dissent, which adopts the "mathematical certainty” of $1,781,094.40 in economic damages based upon an “argumen[t] made by lawyers....” (Dis. Op. atffll 13-14).

. The dissent posits that we are "rejecting the federal court’s method of determining facts...." (Dis. Op. at ¶ 15). But absent stipulation or agreement, facts in a jury trial are determined by juries, not courts (federal or otherwise).

. Therefore, unlike "past medical expenses,” the jury was not instructed to follow an "approved method of calculation” (or the dissent's perceived "mathematical certainty”) regarding the amount of such damages. (Dis. Op. at ¶¶ 11, 14). Of course, if the district court had determined that the verdict was "so excessive, so ‘contrary to right reason,’ as to warrant a new trial or remittitur[,]” then Sears had a remedy — a new trial or remitti-tur.

. The dissent conclusively maintains that "the jurors could not have awarded more than [$1,781,094.40 in economic damages], unless they failed to follow their instructions.” (Dis. Op. at ¶ 13). Is the dissent suggesting, contrary to the instructions provided, that the jury was not "permitted to draw such reasonable inferences from the testimony and exhibits” as they felt were "justified in the light of common experience” and/or that the jury was prohibited from making "deductions and reaching] conclusions which reason and common sense” led them "to draw from the facts ... established by the testimony and evidence[?]”
For example, expert testimony regarding the "household services figures” was based on the assumption of paying a person minimum wage, which was an assumption that the jury was free to reject and determine that the services could not be procured for minimum wage. The "common experience” of the jurors may have been contrary to that assumption.
As to loss of future wage-earning capacity, Learmonth’s expert testified that the average earnings of a high-school graduate were $28,631 per year and of a junior-college graduate were $36,021 per year, and took the average of those two figures of $32,326. No credible expert opines that the specific plaintiff necessarily would have earned an exact maximum amount, but only that their opinion reflects the projected earnings that a person in the same cohort group would likely receive, based on countless variables (subject to a net present value calculation, which is often the subject of debate between qualified experts who cannot agree on the discount rate).
Regarding the net present value of future medical expenses, Learmonth accurately contends that the jury’s "common experience,” "reason,” and "common sense” could have led it to "determine that — based upon the rapidly rising cost of medical care — the future-medical-care figure should be larger than the gross-medical-care figure, given the fact that ... medical inflation is outpacing general inflation.”
In sum, the jury’s province is to make independent determinations on such matters, which may be based upon its "common experience,” "reason,” and "common sense.” Apart from excessiveness, outrageousness, bias, etc., its general verdict should remain undisturbed. See Foradori v. Harris, 523 F.3d 477, 504 (5th Cir.2008) (quoting Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir.1983)). All of those bases for reduction were specifically rejected by the district court.

. The dissent is confusing apples and oranges. Neither its answer, nor the district court’s "mathematical calculation[,]” reveals or dis *639 closes the finding of the trier of fact, the jury, in which it was instructed to exercise its "common experience,” "reason,” and "common sense.” (Dis. Op. at ¶ 12).

.A "fact” is defined as "2. Something objectively verified. 3. a. Something with real, demonstrable existence.” Webster's II New College Dictionary 401 (2001). See also Black’s Law Dictionary 706 (4th ed.1968) (defining "fact” as "[a] thing done; an action performed or an incident transpiring; an event or circumstance; an actual occurrence. An actual happening in time or space or an event mental or physical.... That which has taken place, not what might or might not have taken place.”) (emphasis added).