REVISED April 8, 2022

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2022

Lyle W. Cayce
Clerk

No. 17-30499

Precious Seguin,

*Plaintiff—Appellee*,

*versus*

Remington Arms Company, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-2442

Before Owen, *Chief Judge*, and Dennis and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

The plaintiff seeks to impose liability on a firearm manufacturer for injuries said to result from a design defect. Our interpretive task is to decide whether a Louisiana statute permits that category of claim. We conclude that it does not. We REVERSE and RENDER for the defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, Precious Seguin was injured while she, her father, a brother, and a friend were tracking a wounded deer at night in the woods near

Loranger, Louisiana. Her father's Remington Model 710 bolt-action rifle accidentally discharged and injured her. A year later, Precious Seguin and other family members filed suit in the United States District Court for the Eastern District of Louisiana. Those plaintiffs claimed the court had diversity jurisdiction over the defendant manufacturer, Remington Arms Co., L.L.C. In our earlier opinion in this appeal, we concluded that the initial assertions regarding Remington's citizenship were insufficient to sustain diversity jurisdiction. *See Seguin v. Remington Arms Co., L.L.C.*, 22 F.4th 492, 494–96 (5th Cir. 2022). The parties, though, cured this defect on appeal through the submission of a joint letter and Seguin's filing of an amended complaint. *Id.* at 496.

Early in the litigation, the district court dismissed all parties and claims other than Precious Seguin and her claims under the Louisiana Products Liability Act ("LPLA"). LA. STAT. ANN. §§ 9:2800.51–60. Before trial, the remaining parties stipulated to uncontested facts and filed cross-motions for summary judgment. In the statement of facts, the parties stipulated that the LPLA exclusively governs Seguin's claims; Remington is a "Firearm Manufacturer" under Section 60; Seguin is a "Claimant" under Section 53(4); and Seguin's only products liability claim was for a design defect under Section 56. The district court relied on these stipulations to conclude that the only question was whether Section 60(B) permitted Seguin to recover for a Section 56 design-defect claim against Remington. The district court held that Section 60(B) did permit the claim.

The court's reasoning started with a determination that Section 60(B) was ambiguous in one respect, though not in a manner directly relevant to whether a design-defect claim was permissible. The court also determined that whatever choice was made in resolving the ambiguity would lead to an absurd result. Ambiguity in the statutory text allowed the district court to consider the legislative intent and history of Section 60(B). The court

concluded that there was no statutory purpose to preclude design-defect claims. That analysis inexorably led to a summary judgment for Seguin on that claim. The court dismissed the remaining claims with prejudice and entered final judgment for Seguin in the amount of $500,000.

Remington timely appealed. Since the appeal was filed, there have been two notifications of Remington's bankruptcy. Each of those subjected the appeal to an automatic stay. *See* 11 U.S.C. § 362. The first notice was filed in March 2018, informing this court that Remington had filed a voluntary petition in Delaware bankruptcy court. After those proceedings were completed and the stay was lifted, notice was given to the court in July 2020 that Remington had filed a voluntary petition in bankruptcy court for the Northern District of Alabama. In March 2021, the Alabama court entered an order that certain tort claimants would have the right to pursue their litigation against Remington. Seguin, through counsel, filed a notice with the bankruptcy court that she elected to exercise her right to resume her litigation. As a result, the stay of the case before us was lifted on May 7, 2021. By a joint letter, counsel for each party agreed that no further briefing was needed, and the case was ripe for resolution.

## DISCUSSION

We review summary judgment determinations *de novo*. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This case presents no factual disputes. It turns purely on a question of Louisiana statutory interpretation that neither the Louisiana Supreme Court nor any lower Louisiana court has answered. When faced with uncertainty about state law, one option is for the

No. 17-30499

court to certify the relevant questions to that state's highest court.[1]  We earlier chose that option and certified to the Louisiana Supreme Court a question about the meaning of the statute that controls the outcome of this case. *See Seguin*, 22 F.4th at 497–98.  The Louisiana Supreme Court declined our invitation by a 4-3 vote of the justices.  *Seguin v. Remington Arms Co., L.L.C.*, 2022-CQ-00037 (La. 3/22/22), --- So. 3d ---.

Thus, we perforce follow the other option of interpreting the statute ourselves, applying the state's statutory interpretation methods to conclude as we believe the Louisiana Supreme Court would if it were deciding this case.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).  The remainder of this opinion explains our interpretation.

## I.    *The Louisiana Products Liability Act*

Our only issue is whether the district court erred when it held that Section 60 of the LPLA, which specifically applies to injuries resulting from discharge of a firearm, did not bar Seguin from bringing a claim under Section 56 of the LPLA, which is a general section applicable to design-defect claims.   The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."  LA. STAT. ANN. § 9:2800.52.

Generally, a claimant may recover from a manufacturer if:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

---

[1] Louisiana Supreme Court Rule XII, § 1 permits a federal circuit court of appeals to certify a state law question that is determinative of an issue, when "no clear controlling precedents" from that court exist.  The potential that the state court will not answer is recognized in the Rule:  the Court "may, in its discretion, decline to answer the questions certified to it."  *Id.*  Other courts have occasionally declined to answer our questions. *See, e.g., Sears, Roebuck & Co. v. Learmonth*, 95 So. 3d 633, 639 (Miss. 2012).

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Id.* § 9:2800.54.

In 1999, the Louisiana Legislature amended the LPLA to limit products liability actions against firearms manufacturers, codifying that amendment as Section 60 of the LPLA. 1999 La. Sess. Law Serv. 1299 (codified at § 9:2800.60). The appeal here focuses on Section 60(B):

No firearm manufacturer or seller shall be liable for any injury, damage, or death resulting from any shooting injury by any other person unless the claimant proves and shows that such injury, damage, or death was proximately caused by the unreasonably dangerous construction or composition of the product as provided in R.S. 9:2800.55.

*Id.* § 9:2800.60(B).

When interpreting statutes, Louisiana courts start with the text. They apply "the well-established rules of statutory construction . . . to ascertain and enforce the intent of the statute." *See Boudreaux v. La. Dep't of Pub. Safety & Corr.*, 2012-0239, p.4 (La. 10/16/12); 101 So. 3d 22, 26. If the text "is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE art. 9. Conversely, if "the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." LA. CIV. CODE art. 10.

We add to this analysis the need to look at the entire statute; at times the Louisiana Supreme Court has emphasized a need to interpret one provision in a manner that reconciles it to the rest of an enactment:

> A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions.

*ABL Mgmt. v. Bd. of Supervisors of S. Univ.*, 2000-0798, p.6 (La. 11/28/00); 773 So. 2d 131, 135.

With this guidance, we start down the interpretive path.

## II.  *Section 60(B)'s plain meaning*

In an unambiguous manner, the text of Section 60(B) provides that a manufacturer of a firearm like Remington has liability for harm only when "the claimant proves and shows that such injury, damage, or death was proximately caused by the unreasonably dangerous construction or composition of the product." LA. STAT. ANN. § 9:2800.60(B). The parties agree to label that liability as being for a manufacturing defect. We left out some arguably ambiguous words that were of concern to the district court and which we discuss next, but what we have quoted makes clear that this subsection of the LPLA is limited to dangerous construction or composition of the firearm.

The district court identified ambiguity in Section 60(B) based on the language that liability may exist "for any injury, damage, or death resulting from any shooting injury by any other person." *Id.* In the context of Section

60(B), the phrase "any other person" could mean any person other than (1) the firearm manufacturer or seller; (2) the claimant; or (3) both of the preceding categories. Here, the person who caused the shooting injury — Seguin's father — did not manufacture or sell the firearm and he is not the claimant, so he fits all the offered interpretations of "any other person."

No one argues that the alleged ambiguity makes application of the statute difficult in this case. With respect for the district court, under our understanding of Louisiana interpretive principles, we do not search for meaning outside of the statutory text if the only ambiguity in the statute is irrelevant to the litigation. Remington is a firearm manufacturer, the harm to Seguin resulted from a shooting injury "by any other person," and Seguin brings only a Section 56 design-defect claim.

Our conclusion is that Section 60(B) unambiguously bars design-defect claims. Two more considerations remain. First, does the rest of that enactment create ambiguity in how to read the relevant section? Second, is there anything absurd about the interpretation in the preceding paragraph?

## III.   *Consideration of the entire statute*

Seguin argues that other subsections of the 1999 firearm amendment to the LPLA will become superfluous if we limit Section 60(B) to manufacturing claims. Louisiana courts presume that words, sentences, and provisions in a law are not superfluous. *See Guillory v. Pelican Real Est., Inc.*, 2014-1539, p.3 (La. 3/17/15); 165 So. 3d 875, 877. We "are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found." *Id.* We discuss the subsections said to surplusage under our reading of Section 60(B).

No. 17-30499

*A.    Section 60(C)*

Seguin argues that because Section 60(C) precludes claims against manufacturers for improper *use* of firearms, that part of the statute is superfluous if Section 60(B) had already precluded all non-Section 55 manufacturing-defect claims against manufacturers.

As we must, we start with the text:

> Notwithstanding any other provision of law to the contrary, no manufacturer or seller of a firearm who has transferred that firearm in compliance with federal and state law shall incur any liability for any action of any person who uses a firearm in a manner which is unlawful, negligent, or otherwise inconsistent with the purposes for which it was intended.

LA. STAT. ANN. § 9:2800.60(C).

Seguin's solution — reading Section 60(B) to allow a Section 56 design-defect claim — does not solve Seguin's superfluity problem. Were we to interpret Section 60(B) to allow Section 56 design-defect claims and Section 55 manufacturing-defect claims, Section 60(C)'s preclusion of claims against manufacturers for others' improper use of firearms would be superfluous to both kinds of claims, and unnecessary for both.

It is evident that Section 60(B) is narrower than Section 60(C). Section 60(B) has an actor limitation: "No firearm manufacturer or seller shall be liable for any injury, damage, or death *resulting from any shooting injury by any other person*" except for a Section 55 manufacturing-defect claim. *Id.* § 9:2800.60(B) (emphasis added). Section 60(C)'s comparable actor limitation is broader: "no manufacturer or seller of a firearm . . . shall

8

incur any liability for *any action of any person* who uses a firearm" improperly. *Id.* § 9:2800.60(C) (emphasis added).

Thus, Section 60(C) precludes claims based on conduct by a broader category of actors than Section 60(B). Whatever the meaning, we cannot see that any need to read Sections 60(B) and 60(C) together aids Seguin.

### B.     *Section 60(D)*

Seguin argues that Remington's interpretation would render Section 60(D), which prevents a manufacturer from being liable if its firearms do not include some sort of safety device that is not actually required by statute, superfluous because it essentially is a preclusion of a specific kind of Section 56 design-defect claim. This is the language:

> The failure of a manufacturer or seller to insure that a firearm has a device which would: make the firearm useable only by the lawful owner or authorized user of the firearm; indicate to users that a cartridge is in the chamber of the firearm; or prevent the firearm from firing if the ammunition magazine is removed, shall not make the firearm unreasonably dangerous, unless such device is required by federal or state statute or regulation.

*Id.* § 9:2800.60(D).

We see no unavoidable surplusage. A way to interpret this subsection in a manner to avoid that problem is that it constitutes a prohibition of a category of manufacturing-defect claims. For example, a plaintiff might argue that because of some manufacturing defect of a firearm, the manufacturer has failed to "insure that a firearm has" the specific safety devices. Though Section 60(B) would not prohibit such a claim, Section 60(D) would, meaning Section 60(D) is not superfluous.

Finally, Section 60(D) does not have an actor limitation. Thus, because Section 60(D) precludes claims arising from harm other than that

resulting from a shooting injury caused by the subset of actors referenced in Section 60(B), Section 60(D) is not superfluous.

### C.    Section 60(E)

Seguin argues that Remington's interpretation would render Section 60(E) superfluous because it precludes a specific kind of design-defect claim already precluded by Section 60(B). This is what the section provides:

> (1) For the purposes of this Chapter, the potential of a firearm to cause serious injury, damage, or death as a result of normal function does not constitute a firearm malfunction due to defect in design or manufacture.
>
> (2) A firearm may not be deemed defective in design or manufacture on the basis of its potential to cause serious bodily injury, property damage, or death when discharged legally or illegally.

*Id.* § 9:2800.60(E).

Like Section 60(D), Section 60(E) does not have an actor limitation, thereby precluding claims where the actor limitation of Section 60(B) does not apply, such as when the harm resulted from a shooting injury caused by someone outside the Section 60(B) actor subset.

### D.    Section 60(F)

Section 60(F) protects manufacturers from certain kinds of claims of a failure to warn:

> Notwithstanding any provision of law to the contrary, no manufacturer or seller of a firearm shall incur any liability for failing to warn users of the risk that:
>
> (1) A firearm has the potential to cause serious bodily injury, property damage, or death when discharged legally or illegally.
>
> (2) An unauthorized person could gain access to the firearm.

(3) A cartridge may be in the chamber of the firearm.

(4) The firearm is capable of being fired even with the ammunition magazine removed.

*Id.* § 9:2800.60(F).

Yet again, we rely on the fact that this section includes no actor limitation. Thus, Section 60(B) does not block all failure-to-warn claims but only those based on harm resulting from a shooting injury by a specific actor subset.

We conclude that none of the other subsections of Section 9:2800.60 are superfluous under our reading that Section 60(B) forecloses design-defect claims. Even though the meaning of some of the other sections required analytical effort, we at least conclude that any duplication of meaning is not reduced by adding design-defect claims to the coverage of Section 60(B). In other words, Seguin's reading of Section 60(B) would not resolve the superfluity that her argument would have us identify.

We conclude with considering whether this limited meaning is absurd.

## IV.    *Possible absurdity*

In Louisiana, "a court must give effect to the literal application of the language of a statute . . . except in the rare case where such application will produce absurd or unreasonable results." *Pumphrey*, 2005-0979, p.14; 925 So. 2d at 1211. We see no evidence from that state's caselaw that a search is to be made for an actual explanation from the legislature. Instead, we are "to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings." *Savoie v. Rubin*, 2001-3275, p.4 (La. 6/21/02); 820 So. 2d 486, 488.

Remington suggests that the legislature might have been fearful of "regulation through litigation." That is, allowing design-defect claims to proceed under the circumstances set forth in Section 60(B) poses a risk that judges and juries could deem certain designs defective, resulting in a virtual prohibition of those designs in all cases and for all manufacturers. By contrast, manufacturing-defect claims do not present the same risk of regulation through litigation because they do not affect entire product lines or industry-wide designs.

It is evident that the legislature sought to restrain liability. The first section of the 1999 amendment addressing firearms stated "that the Louisiana Products Liability Act was not designed to impose liability on a manufacturer or seller for the improper use of a properly designed and manufactured product," and further, "that the manufacture and sale of firearms" by those who are properly licensed "is lawful activity and is not unreasonably dangerous." 1999 La. Sess. Law Serv. 1299 (codified at § 9:2800.60). We consider this legislative statement of purpose in our analysis of the possibility of absurdity in the manner in which we have interpreted Section 60(B). Of course, this introductory section as well as Section 60(E) both refer to design defects. We conclude that such references neither suggest absurdity nor create ambiguity. A somewhat broader hortatory statement of purpose than is realized in actual statutory language is not absurd, and, possibly, not even unusual.

The plain text leads to preventing a meaningful category of potential claims against the manufacturers of firearms. In light of the overall focus of this legislation on providing a variety of protections to firearm manufacturers, we see no absurdity in giving these words the meaning they obviously have.

No. 17-30499

We REVERSE and RENDER judgment for Remington.

No. 17-30499

JAMES L. DENNIS, *Circuit Judge*, dissenting:

The Louisiana Supreme Court having denied the application for a certified question, the majority now reverses the district court and renders judgment for Remington.  Because I continue to agree with the district court's rationale and result in plaintiff's favor, I continue to respectfully dissent for the same reasons I previously assigned.  My colleagues' majority opinion erroneously applies §60(B) mechanistically and robotically, disregarding the context of Louisiana and American products liability law, and reaching absurd consequences. *Seguin v. Remington Arms Co., L.L.C.*, 22 F.4th 492, 499 (5th Cir. 2022) (Dennis, J., dissenting).